**In re Emily DAVIS, a/k/a Emily Winn, Debtor.**

**Robert J. TAYLOR, Trustee, Plaintiff,**

**v.**

**FREELAND & KRONZ, a partnership; Wendell G. Freeland; Richard F. Kronz; and Emily Davis, Defendants.**

**Bankruptcy No. 84–2291.**
**Adv. No. 88–0446.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 7, 1989.

Stanley E. Levine, Campbell & Levine, Pittsburgh, Pa., for debtor/defendant.

Gary W. Short, Pittsburgh, Pa., for plaintiff.

Kenneth P. Simon, Simon & Simon, Pittsburgh, Pa., for defendants, Freeland & Kronz, Wendell G. Freeland and Richard F. Kronz.

Robert J. Taylor, Ambridge, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is the Trustee's *Complaint To Avoid Post–Petition Transfers, And To Recover The Property Transferred Or The Value Of Such Property.* Specifically, Robert J. Taylor, Trustee ("Trustee") seeks to avoid and recover certain postpetition transfers of the proceeds of the settlement of a legal action brought by Emily Davis ("Debtor") against Trans World Airlines ("TWA").

The Trustee contends that the payment of that portion of the settlement which was allocated to lost wages suffered by Debtor prior to the bankruptcy filing is "property of the estate" and consequently, any transfer thereof is avoidable pursuant to 11 U.S.C. § 549(a). The Trustee further claims that, pursuant to 11 U.S.C. § 550(a), he is entitled to recover $67,349.00, plus interest, which sum is the alleged value of the estate's interest in the cause of action at the time the bankruptcy petition was filed.

Defendants argue that the proceeds of the settlement are not "property of the estate". In the alternative, Defendants aver that if they were estate assets, said assets were exempted by Debtor. Defendants opine that as no party in interest, including the Trustee, has objected to the exemption of the cause of action, said exemption, whether having a statutory basis or not, should be permitted.

The Court has heard the testimony of the parties, reviewed all of the exhibits, and researched the law, and now finds that the Trustee may avoid and recover $23,483.75, plus interest. Said sum will be sufficient to pay all creditors one hundred percent (100%) of their claims plus interest, if interest is appropriate. In addition, excess funds will be available for payment of appropriate administrative fees and costs. Any sum not utilized will be returned to Defendants.

## FACTS

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 24, 1984. At the time of the filing, Debtor was pursuing a legal action against TWA alleging employment discrimination. Debtor had filed a complaint in April of 1978 with the Pittsburgh Human Relations Commission ("Commission") in which she alleged that TWA had discriminated against her in denying promotions on account of her race and sex.

The Commission found in favor of Debtor on December 16, 1980. It did not, however, award damages at that time; rather, it directed TWA to submit further information in order that the amount of damages might be determined.

TWA appealed the Commission's decision to the Court of Common Pleas of Allegheny County, Pennsylvania. At that point, prior counsel's representation was terminated and the law firm of Freeland & Kronz was retained to represent the Debtor. The Commission's decision was reversed by the Court of Common Pleas on September 23, 1981.

Debtor appealed this decision to the Commonwealth Court of Pennsylvania, which reversed the decision of the Court of Common Pleas, and reinstated the decision of the Commission on June 27, 1983.

TWA then petitioned the Pennsylvania Supreme Court for an Allowance of Appeal, which was granted in November of 1983. The decision of the Commonwealth Court was affirmed on November 29, 1984 by an equally divided vote of the Supreme Court. Mr. Justice Papadakos, who as a Common Pleas Judge had previously reversed the decision of the Commission, did not participate in the decision.

TWA thereafter petitioned the Pennsylvania Supreme Court to permit it to file an Application For Reargument Out Of Time. The Application was allowed and the matter was reargued on September 16, 1986. On October 1, 1986, the Supreme Court concluded that reargument had been improvidently granted and dismissed the appeal of TWA.

Debtor's cause of action against TWA was before the Pennsylvania Supreme

Court for the first time when she filed her Chapter 7 voluntary petition on October 24, 1984. The appeal by TWA had been briefed and argued, but was not decided until approximately five (5) weeks later.

Debtor listed the proceeds of the legal action against TWA with an unknown value on Bankruptcy Schedule B–2. She also claimed the proceeds of the cause of action as exempt on Schedule B–4 pursuant to 11 U.S.C. §§ 522(b) and (d) and listed its value as "unknown". In addition, Debtor stated on Schedule A–2 that there were no creditors holding security and on Schedule A–3 listed a total of $11,069.59 in liquidated and undisputed liabilities to unsecured creditors.

Robert F. Taylor, Esq., was appointed Interim Trustee on November 26, 1984, and he presided over a Section 341(a) Meeting of Creditors on January 4, 1985. Debtor and her bankruptcy counsel attended the meeting and they indicated a possible recovery in the cause of action against TWA of $90,000.00. The Proceeding Memo prepared by the Trustee evidenced Debtor and/or Debtor's counsel's acknowledgement of the litigation and its potential value, and noted that the matter was on appeal at that time.

The Trustee, on various occasions prior to and subsequent to the time frame for objecting to exemptions, advised Debtor of his legal position that the cause of action was an asset of the estate; however, on no occasion did he perform the obvious, namely, formally object to the exemption of this estate asset.

Debtor received a discharge from bankruptcy on October 16, 1985; however, the case has never been closed.

On September 11, 1987, Debtor executed a settlement agreement with TWA which had a value approximating $110,000.00. Debtor granted TWA a release of all claims against it in consideration of $95,000.00 in cash, plus other valuable consideration (travel vouchers) worth approximately $15,-000.00.

According to the precise and agreed upon terms of the settlement contract negotiated by the parties, the consideration to Debtor was to be "... paid, allocated, and apportioned ..." as follows:

(1) $23,483.75, less applicable taxes, was to be paid to Debtor "as and for back pay or front pay";

(2) An additional $23,483.75 was to be paid to Debtor "... as and for all alleged tort claims or any other claims not represented (sic) asserted wage losses"; and

(3) $63,032.50 was to be paid to Debtor and Freeland & Kronz for attorney's fees and costs. Of this amount, $48,-032.50 was to be paid in cash. The remaining $15,000.00 consisted of "miscellaneous charge orders" (i.e., travel vouchers) which could be used either by Freeland & Kronz or their designees for the purchase of air transportation from TWA.

On September 17, 1987, TWA issued a check payable to Debtor and Freeland & Kronz in the amount of $71,516.25, in satisfaction of those portions of the settlement allocated to tort claims ($23,483.75) and to attorney's fees and costs ($48,032.50).

On September 21, 1987 TWA issued another check, payable to Debtor, in satisfaction of that portion of the settlement allocated to back pay or front pay. The check was in the amount of $16,614.75, with the remaining $6,689.00 deducted for taxes.

On October 21, 1987 Freeland & Kronz disbursed the check for $71,516.25 as follows: $32,159.50 was distributed to Debtor; the remaining $39,356.75 was distributed to Freeland & Kronz.

Freeland & Kronz also received, pursuant to the settlement, $15,000.00 worth of travel vouchers. It retained $7,500.00 worth of them and assigned the remaining $7,500.00 worth to Debtor for her own use.

The Trustee sent a letter to Freeland & Kronz on May 2, 1988, requesting information on the status of Debtor's cause of action. Richard Kronz informed the Trustee of the settlement on May 6, 1988.

On October 8, 1988, the Trustee commenced the present adversary proceeding by filing a Complaint To Avoid Post–Peti-

tion Transfers, And To Recover The Property Distributed Or The Value Of Such Property.

## ANALYSIS

With certain exceptions not relevant here, the trustee may avoid any postpetition transfer of "property of the estate" of a debtor that is not authorized under the Code or by the Court. 11 U.S.C. § 549(a). In addition, the trustee may recover, for the benefit of the estate, either the property transferred or the value of such property from the initial transferee or any immediate transferee of such initial transferee. 11 U.S.C. § 550(a).

11 U.S.C. § 541 defines, with substantial specificity, what kinds of property are "property of the estate". Congress intended a broad range of property to be brought into the estate. *U.S. v. Whiting Pools,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Section 541 includes all kinds of property, both tangible and intangible, cause of action, and all other forms of property formerly specified in Section 70(a) of the old Bankruptcy Act. 4 Collier on Bankruptcy ¶ 541.01 at 541–5 (15th ed. 1989), *citing to* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It even includes property needed for a debtor's fresh start. *Warren v. G.M. Scott & Sons,* 34 B.R. 543, 544 (Bankr.S.D. Ohio 1983).

■ Once property is included in the bankruptcy estate, the debtor may exempt it pursuant to 11 U.S.C. § 522. The Bankruptcy Court must then determine what property may be exempted and what remains property of the estate. *See* 4 Collier on Bankruptcy ¶ 541.01 at 541–6 (15th ed. 1989). When a claimed exemption is upheld by the court, the property so exempted no longer is considered property of the estate. *See In re Gagnard,* 17 B.R. 811, 813 (Bankr.D.La.1982).

Defendants contend that the proceeds of the settlement were exempted from Debtor's estate, and hence are not subject to 11 U.S.C. §§ 549(a) and 550(a), as neither the

Trustee, nor any other party in interest, ever objected to Debtor's claimed exemption in the proceeds of the cause of action.

11 U.S.C. § 522(*l*) provides in relevant part that:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt is exempt.

There is a significant difference of opinion among those courts which have considered the matter as to whether a claimed exemption that is not objected to in a timely manner by a party in interest is thereby granted in every instance.

■ Some courts have held that failure of any party in interest to timely object to a claimed exemption results in allowance of the exemption *as declared. See In re Grossman,* 80 B.R. 311 (Bankr.E.D.Pa. 1987); *In re Hawn,* 69 B.R. 567 (Bankr.E. D.Tenn.1987); *In re Hahn,* 60 B.R. 69 (Bankr.D.Minn.1986); *In re Kretzer,* 48 B.R. 585 (Bankr.D.Nev.1985); *Matter of Thomas,* 43 B.R. 201 (Bankr.M.D.Ga.1984); *Matter of Wiesner,* 39 B.R. 963 (Bankr.W. D.Wis.1984); *Matter of Gullickson,* 39 B.R. 922 (Bankr.W.D.Wis.1984).

Other courts have voiced concern that rigid enforcement of § 522(*l*), without further qualification, would permit what is tantamount to "exemption by declaration". They construe this subsection as implicitly containing the additional requirement that there be a statutory basis for the claimed exemption before the failure of any party in interest to timely object to it has any legal effect. *See Matter of Dembs,* 757 F.2d 777 (6th Cir.1985); *In re Rollins,* 63 B.R. 780 (Bankr.E.D.Tenn.1986); *In re Bennett,* 36 B.R. 893 (Bankr.W.D.Ky.1984).

Although plausible arguments can be made in support of either of these positions, this Court is convinced that the view articulated in *In re Bennett, supra* at 894–95, is the superior view. The Court is persuaded by the explicit incorporation by reference in subsection (1) of the provisions of subsection (b), which limits exemptions to:

"... any property that is exempt *under federal law* ... or *state law* or *local law* that is applicable on the date of the filing of the petition."

11 U.S.C. § 522(b) (Emphasis added.)

If Debtor may select in any manner her exemptions, then no purpose is served by the inclusion of the emphasized terms. We decline to determine that Congress inserted the terms but refused to grant them meaning.

There are also policy considerations which make the latter view the better one. The former view would encourage certain debtors of questionable integrity to claim *all* of their property as exempt, thereby leaving it to the trustee and creditors to challenge such claims. Orderly administration of such debtors' estates would be difficult, if not impossible, and uncertainty and constant litigation, if not outright chaos, would result. *See In re Bennett, supra.* The debtor could gamble that the trustee would be inept and/or negligent in fulfilling his mandated duties. If correct, the debtor would collect ill-gotten gain while his creditors suffered the loss. Again, this surely would not be the congressional intent.

▬ Both sides have urged this Court to disregard the language of the settlement agreement in determining the precise nature of the settlement. They instead urge this Court to characterize the settlement in ways which are fanciful at best, and require leaps of imagination which the Court is unwilling to make. The only acceptable basis for determining the meaning of the settlement is found in the language used therein.

Defendants correctly point out that the value of any interest in property which a debtor wishes to exempt must be ascertained as of the date the bankruptcy petition was filed. *See* 11 U.S.C. § 522(a)(2). They strenuously argue that the value of the cause of action against TWA, as of October 24, 1984, was approximately $10,000.00.

Before Debtor filed her voluntary petition, the Commonwealth Court of Pennsylvania had reversed the unfavorable decision of the Court of Common Pleas and had reinstated the favorable decision of the Commission. The Commonwealth Court of Pennsylvania determined that TWA owed the Debtor a sum of money.

In addition, although damages had not yet been determined, Debtor and her bankruptcy counsel stated on January 4, 1985, at the first meeting of creditors, that she anticipated a recovery of $90,000.00. This belies the contention made at trial that the cause of action had a value of merely $10,000.00 as of October 24, 1984.

The Court finds that the value of the cause of action on October 24, 1984 was $110,000.00. John Meyer, Esq., at the time an associate of Freeland & Kronz, testified that the attitude of his employer at that time was that their client's cause of action had great value. Over 500 hours were ultimately expended on the case. Moreover, Freeland & Kronz at no time ever suggested to their client that she settle the action for such a nominal amount of $10,000.00. That Debtor was able to realize the full value of her cause of action is further evidence of its value.

▬ Debtor, in her Schedule B–4, refers to § 522(d) in support of the claimed exemption. In particular, she appears to rely upon 11 U.S.C. § 522(d)(11), which exempts:

[a] payment in compensation of loss of future earnings of the debtor ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

There is no statutory basis for that portion of the $71,516.25 postpetition cash payment by TWA to Freeland & Kronz and Debtor for "... tort claims or any other claims not represented (sic) wage losses". The Trustee may avoid and recover from Freeland & Kronz (as initial transferee) and Debtor (as the immediate transferee of Freeland & Kronz) $23,483.75, that portion of the settlement allocated for so-called "tort claims", plus interest at the prevailing legal rate, from the date of the initial transfer on September 17, 1987.

Defendant testified that this portion of the settlement in reality was for lost

wages, but was described as being for tort claims in order to avoid payment of applicable taxes. As far as can be determined, no taxes were ever withheld or ultimately paid for this portion of the settlement. Neither Defendant can now argue that it really was for lost wages and therefore may be exempted pursuant to 11 U.S.C. § 522(d)(11). In effect, they are utilizing a knife and averring that it only cuts one way. As Defendants treated this payment as a tort recovery and failed and/or refused to pay taxes on it, this Court feels constrained to and must order that it be returned to the Trustee. There is no statutory basis permitting an exemption of this "tort recovery".

 Also, Defendants are prevented by the doctrine of judicial estoppel from asserting in the present proceeding that this portion of the settlement was actually for lost wages. The doctrine of judicial estoppel is applicable at any time that a litigant plays "... fast and loose with the courts ...". *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3rd Cir.1953). According to the doctrine, "a party may be precluded by a prior position taken in litigation from later adopting an inconsistent position in the course of a judicial proceeding". *Id.* Defendants unquestionably took the position in the previous legal action that that portion of the settlement now under discussion was for tort losses. It was to their benefit and in their interest to do so. Consequently, they cannot now be heard to maintain that it is really for lost wages. They made their choice and are bound thereto.

As has been indicated, when Debtor filed her voluntary Chapter 7 petition on October 24, 1984, she listed a total of $11,069.59 in liquidated and undisputed liabilities on Schedule A–3. Requiring Defendants to return the $23,483.75 portion of the settlement for averred tort losses will produce a *res* sufficient to pay all of Debtor's creditors, with interest, as well as the legal fees and costs incurred by counsel to the Trustee for prosecuting the present action.

■ Consequently, it is not necessary for this Court to also determine whether any of the remaining portions of the settlement should be returned to the Trustee. Even supposing for the moment that some or all of the remainder also should be returned, this Court declines to do so. As all of Debtor's creditors will be paid in full, the remainder ultimately would be returned to Defendants by the Trustee, after said Trustee deducted additional fees for administering the additional assets. This Court, however, is unwilling to allow the Trustee to so benefit from his own dereliction of duty and/or ignorance of bankruptcy law in failing to object in a timely fashion to Debtor's claimed exemption for the proceeds of her lawsuit against TWA. Had the Trustee acted with knowledge and/or diligence, the present action, in all likelihood, never would have arisen.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 7th day of September, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Defendants Emily Davis and Freeland & Kronz, return to Plaintiff Robert J. Taylor, Trustee, the amount of $23,483.75, plus interest at the prevailing legal rate.