In the Matter of Adelle M. SHERK, Debtor.

Adelle M. SHERK, and Ted R. Cackowski, Appellants,

v.

TEXAS BANKERS LIFE & LOAN INSURANCE CO., Appellee.

No. 89–7017.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1990.

**1172**

Ted Robert Cackowski, Austin, Tex., for Sherk.

James D. Doyle, III, Kuhn, Doyle & Kuhn, Austin, Tex., for Cackowski.

Earl W. Sealy, James Arthur Price, Jr., Long, Burner, Parks & Sealy, Austin, Tex., for Texas Bankers Life.

Before WISDOM, GARWOOD, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

This case addresses the issue of whether the filing of a state court suit by a debtor's wife alleging fraudulent transfer of a homestead property, where that homestead property has been claimed as an exemption by her debtor husband in his bankruptcy case, violates the automatic stay imposed by the Bankruptcy Code. Because we find that the claim for fraudulent transfer of a homestead property belongs to the trustee and is property of the estate, we hold that Adelle Sherk's state court suit was in violation of the automatic stay. Accordingly, we AFFIRM the district court on this count. Because we find merit in Adelle Sherk's argument as to why the homestead property was no longer property of her debtor husband's estate when she filed her state law suit, we REVERSE on the issue of sanctions.

I

In 1980–1981 Adelle Sherk ("Sherk") and her husband Richard Sherk built a home in Austin, Texas. They financed it through Community National Bank. After several extensions, renewals, and restructurings of the Sherk's note, the details of which are not relevant to the case before us, the Sherks defaulted on their loan, and the property was foreclosed upon on March 3, 1987. Mr. Sherk then arranged with Texas Bankers Life and Loan Insurance Company ("Texas Bankers") that Texas Bankers would purchase the property, and that the Sherks would lease the property from Texas Bankers, with an option to repurchase it. Texas Bankers later purchased the property from Community National Bank for $130,000.

When the Sherks failed to exercise their option to repurchase and defaulted on their lease, Texas Bankers obtained a judgment from the Justice of the Peace Court in Travis County in an eviction action against the Sherks. Mr. Sherk filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on September 14, 1987 in the United States Bankruptcy Court for the Western District of Texas, Austin Division. Mrs. Sherk was not a debtor in that case. At the same time, Mr. Sherk filed a complaint to Void Lien, Recover Property of the Estate for Injunctive Relief and Temporary Restraining Order which became Adversary Proceeding Number 87–1288. In his complaint, Mr. Sherk asserted that the Deed of Trust Lien of Community National Bank was defective or invalid, the foreclosure was improperly or collusively conducted, usurious interest was charged, and Texas Bankers was not a good faith transferee. The bankruptcy judge granted the temporary restraining order but later denied Mr. Sherk's request for preliminary injunction. The bankruptcy judge granted

Texas Bankers' Motion for Summary Judgment. In his Order the bankruptcy judge found that Texas Bankers was a transferee of the property in good faith for value, without knowledge of the alleged voidability of any previous transfer. Mr. Sherk's appeal from this order was never perfected, and, consequently, was dismissed on January 25, 1988.

On October 16, 1987, Mr. Sherk filed his Schedule B-4 of claimed exempt property in his bankruptcy proceeding, listing among his claims his claim to the homestead residence. No objection to this exemption was filed within the thirty day time period allowed by Bankruptcy Rule 4003(b).

On February 18, 1988, Mrs. Sherk, represented by Ted Cackowski, the same attorney who represented her husband, began the case before us by filing an action against Texas Bankers and Community National Bank in the 167th Judicial District Court of Travis County, Texas, seeking damages for the conduct of both parties in connection with the foreclosure of her homestead interest and Texas Bankers' conduct in connection with the subsequent negotiations and agreements concerning repurchase. This state court action was removed to the Bankruptcy Court by Texas Bankers and became Adversary Proceeding Number 88–1083 within Mr. Sherk's bankruptcy case. Mrs. Sherk then filed a Motion to Remand, Abstain and Demand for Jury Trial. Texas Bankers filed a Motion to Dismiss. On October 7, 1988 the bankruptcy court granted Texas Bankers' Motion to Dismiss and recommended that Sherk's Motion to Remand be denied.

On October 17, 1988, Texas Bankers filed a motion to amend the findings of fact made by the bankruptcy judge in his order dismissing Sherk's case. Sherk filed a notice of appeal with the bankruptcy court

which was docketed on October 31, 1988 as Case No. A–88–CA–1047. On November 12, 1988, the bankruptcy court entered its Order Amending Finding of Fact and Conclusion of Law. On November 23, 1988, Sherk filed a second notice of appeal with the bankruptcy court which was docketed on December 1, 1988 as Case No. A–88–CA–1121. Sherk subsequently dismissed her second appeal.

The district court affirmed the order of the bankruptcy court and adopted its recommendation to deny Sherk's Motion to Remand. The district court found that none of the bankruptcy court's findings of fact were clearly erroneous and that its conclusions of law were correct. As an independent basis for affirming the dismissal, the district court found that Sherk had voluntarily dismissed her only perfected appeal. The district court ordered Sherk and her attorney, jointly and severally, to pay Texas Bankers $9,929.57, the amount of the attorneys' fees it incurred in its appeal from the bankruptcy court to the district court.

## II

A. *The district court properly affirmed the bankruptcy court's Order dismissing Sherk's case against Texas Bankers and properly denied Sherk's Motion to Remand.*

Sherk challenges the district court's exercise of jurisdiction over her suit as well as its finding that the filing of her state court suit violated the automatic stay of 11 U.S.C. § 362(a)(3).[1]

The controversy here is whether the Sherks' interest in the residence, which was the subject of Mrs. Sherk's suit, was property of the estate; if so, the district court had exclusive jurisdiction over the property

---

1. 11 U.S.C. § 362(a)(3) provides:
    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

    .        .        .        .        .

    (3) any act to obtain possession of property of the estate or of property from the estate or to

exercise control over property of the estate;
....

pursuant to 28 U.S.C. § 1334(d)[2] and her state court action was in violation of the automatic stay. Sherk's argument is that since her husband had listed their homestead as exempt on his Schedule B–4 Exemptions and since Texas Bankers did not object to that exemption, the claim to the homestead property was no longer property of the estate.

Sherk agrees with Texas Bankers that when her husband initially filed his bankruptcy case, her community property interest in the homestead became part of the property of the estate pursuant to Section 541(a)(2) of the Bankruptcy Code.[3]

Sherk contends, however, that since there were no objections to her husband's listing of their homestead claim as a state law exemption[4] on his Schedule B–4, that both his interest, as well as hers, in the homestead community property ceased to be property of the estate and therefore ceased to be subject to the automatic stay. *See In re Kretzer,* 48 B.R. 585, 588 (Bankr. D.C.Nev.1985); *In re Brandstraetter,* 767 F.2d 324, 326 (7th Cir.1985); *In re King,* 15 B.R. 548, 548–49 (Bankr.M.D.Pa.1981). Because we find that the Bankruptcy Code grants a trustee the power to avoid fraudulent transfers of the debtor's property, we hold that Mr. Sherk's listing of the Sherk's homestead as a claimed exemption on his Schedule B–4 could not suffice to remove their claim to the homestead property from the estate. Therefore, we reject Mrs. Sherk's argument.

■ Once property is included in the bankruptcy estate, a debtor may exempt it

pursuant to 11 U.S.C. § 522(*l*).[5] When a claimed exemption is upheld by the bankruptcy court, it is no longer property of the estate. *See In re Davis,* 105 B.R. 288, 292 (Bankr.W.D.Pa.1989), citing *In re Gagnard,* 17 B.R. 811, 813 (Bankr.D.La.1982).

■ Courts which have had this question before them have not rendered uniform decisions as to whether an exemption claimed by a debtor that is not objected to in a timely manner by a party in interest is granted in every instance. *See In re Davis,* 105 B.R. at 292 and its citations of cases taking both positions. *See also In re Keenan,* 106 B.R. 239, 242 (Bankr.D.Colo. 1989); *In re Montgomery,* 80 B.R. 385, 388–89 (Bankr.W.D.Tex.1987). We agree with the courts which have held that Section 522(*l*) contains an implicit "additional requirement that there be a statutory basis for the claimed exemption before the failure of any party in interest to timely object to it has any legal effect." *In re Davis,* 105 B.R. at 292 and cases cited in that opinion. As was the *In re Davis* court, we too are persuaded by the reference in § 522(*l*) to the provisions of subsection (b) which limits exemptions to "... any property that is exempt under federal law ... or state law or local law that is applicable on the date of the filing of the petition." *See In re Davis,* 105 B.R. at 292–93.

In *In re Davis* the debtor had claimed the proceeds of a settlement of a legal action as exempt and the trustee had failed to file an objection. The court found that the proceeds were property of the estate,

**2.** 28 U.S.C. § 1334(d) provides: The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

**3.** Section 541(a)(2) of the Bankruptcy Code provides: (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property wherever located and by whomever held:

. . . . .

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

**4.** *See* Bankruptcy Code section 522(b)(2); Tex. Property Code § 41.001.

**5.** Section 522(*l*) provides:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt.

holding that the right to claim an exemption contains the implicit requirement that there be a statutory basis for the claimed exemption, and that since there was no statutory basis to exempt the proceeds of a legal settlement, they remained property of the estate despite the debtor's attempted exemption. *In re Davis*, 105 B.R. at 292–93.

■ Mr. Sherk listed the homestead property on his schedule of exemptions. At that time, neither of the Sherks was in possession of the homestead property; Texas Bankers had foreclosed upon it. It is not disputed that if the Sherks had been in possession of the homestead, Mr. Sherk could have validly exempted it from his bankruptcy estate.[6] However, the Sherks had no homestead, only a claim that their homestead had been wrongly foreclosed upon. Thus, we must determine whether Mr. Sherk's *claim* to the homestead is one which he can validly exempt under state law. This Court finds that Mr. Sherk cannot exempt such a claim because the Bankruptcy Code requires that a claim for fraudulent transfer belongs to the bankruptcy trustee.

Section 522 of the Bankruptcy Code provides for exemptions and states:

.　　.　　.　　.　　.

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . .

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable. . . .

Sherk's claim is that the property was fraudulently transferred to Texas Bankers. According to the Bankruptcy Code, the trustee has the power, under Section 548[7] and 550,[8] to recover for the bankruptcy estate property which has been fraudulently transferred. The section 548 power to avoid fraudulent transfers "usually may only be asserted by a trustee or, under Section 1107(a) of the Code, by a Chapter 11 debtor-in-possession." *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 827 (9th Cir. BAP 1986). Indeed, "[a]n action to set aside a fraudulent transfer must be brought in the name of the bankruptcy estate as the real party in interest." *Id.* at 828–29. *See also In re Auxano, Inc.*, 87 B.R. 72 (Bankr.W.D.Mo.1988). The Fifth Circuit held, in part, in *In re Mortgage America*, 714 F.2d 1266 (5th Cir.1983), that, although a cause of action under the Texas law of fraudulent transfers was assertable only by a creditor and did not

---

6. *See* Texas Property Code § 41.001.

7. Section 548 provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

.　　.　　.　　.　　.

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

8. Section 550 provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of the property, . . .

belong to the debtor, such a claim was stayed by the automatic stay. The Court found that:

> Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance law would interfere with this estate and with the equitable distribution scheme dependent upon it, and therefore are appropriately stayed under section 362(a)(3).

714 F.2d at 1275–76.

*See also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1145–54 (5th Cir.1987).

A trustee may recover property fraudulently transferred by avoiding the transfer under sections 548 and 550. According to section 550(a), this recovered property is retained for the benefit of the estate. It becomes property of the estate under section 541(a)(3) which provides that any interest the trustee recovers under section 550 becomes property of the estate. Section 522(g),[9] however, allows a debtor to exempt property recovered by the trustee under section 550, if the debtor could have exempted such property under subsection (b) and provided certain conditions are met. If the trustee has not exercised his avoidance powers, the debtor may exercise those powers pursuant to section 522(h).[10] Then, section 522(i)[11] authorizes the debtor to recover the property under section 550 the same as if the trustee had avoided the transfer. However, section 522(j) makes clear that the debtor may recover property under sections 522(g) or (i) only to the extent the debtor may exempt that property. The clear import of section 522 is that the trustee has the first chance to recover fraudulently transferred property and only if the trustee does not attempt to recover the property may the debtor attempt to do so. Once either the trustee or the debtor has avoided the transfer, the property becomes property of the estate, and the debtor may then exempt it if he meets the statutory requirements.

■ On the basis of this reasoning, we find that the mere fact that Mr. Sherk's claimed exemption was not objected to is not enough to remove his claim from the estate. Texas state law provides for an exemption for homestead property; it does not provide for an exemption for a *claim* to homestead property which has been foreclosed upon. Thus, there was no statutory basis for Mr. Sherk's claimed exemption. Moreover, the Bankruptcy Code indicates that claims for fraudulent transfer of the debtor's property belong to the trustee and are property of the estate. If the trustee does not exercise his avoidance powers, the debtor may attempt to recover the proper-

---

**9.** Section 522(g) provides:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

**10.** Section 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or

724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

**11.** Section 522(i) provides:

(i)(1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under section (b) of this section.

(2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

ty. Any property recovered through the exercise of avoidance powers by either the trustee or the debtor becomes property of the debtor's estate. Then, assuming certain conditions are met, the debtor may exempt the property pursuant to Texas state law. The debtor may not exempt the claim to the property and then attempt to recover the property on his own.

■ The automatic stay protects property of the estate by preventing prosecution of claims against non-debtors when those claims are property of the estate. *See Matter of U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 490 (Bankr.N.D.Ind.1990), which includes as an example of such a claim a cause of action to recover fraudulent conveyances of a debtor's property. *See also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir.1987). Before filing her state suit, Mrs. Sherk should have asked the bankruptcy court to lift the stay to allow her to pursue her state claims.

■ Since we find that the claim that the Sherks's homestead was fraudulently transferred was property of Mr. Sherk's estate, the district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1334(d). In addition, since we hold that the Sherks's *claim* to the homestead was not removed from the debtor's estate simply on the basis of Mr. Sherk's listing the homestead as an exemption, and since Mrs. Sherk's suit sought in part to recover the homestead property, a claim that belonged to the bankruptcy estate, we find that Mrs. Sherk's state law suit was in violation of the automatic stay.

Mrs. Sherk's argument that the mandatory abstention doctrine as stated in 28 U.S.C. § 1334(c)(2) is applicable is rejected since the mandatory abstention doctrine applies only when property of the estate is not involved and we have held that the claim to the homestead was property of the estate.

■ As an alternative basis for upholding the removal and subsequent dismissal of Mrs. Sherk's state action, we hold that the decision in the Adversary Proceeding filed by Mr. Sherk controlled her claim.

In Mr. Sherk's adversary proceeding, the bankruptcy court determined that the lien on the Sherks's property was valid and enforceable. This decision was not clearly erroneous in view of the fact that exempt property is not protected from the enforcement of valid liens. *See* 522(c) of the Bankruptcy Code. *See also In re King*, 15 B.R. at 549; *In re Montgomery*, 80 B.R. 385, 391 (Bankr.W.D.Tex.1987).

■ As a third basis for our decision, this Court upholds the district court's finding that Mrs. Sherk dismissed her only effective appeal.

Bankruptcy Rule 8002(b) provides:

If a timely motion is filed by any party: ... (2) under Rule 7052(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; ... A notice of appeal filed before the disposition of any of the above motions shall have no effect; a new notice of appeal must be filed....

*See also* Fed.R.App.P. 4(a)(3) which establishes that the filing of a motion to alter or amend a judgment of the trial court completely destroys any notice of appeal filed prior to the disposition of such motion.

Mrs. Sherk's first notice of appeal to the district court was filed after Texas Bankers had filed a motion to amend findings of fact and conclusions of law but before the bankruptcy court had ruled on that motion. Her second notice of appeal was filed after the bankruptcy court's ruling on the motion to amend. The first appeal was of no effect after Texas Bankers filed its motion to amend. Mrs. Sherk voluntarily dismissed the second appeal. She states in her brief that her intent in dismissing the action was "to avoid the superfluous creation of an additional case when all the pleadings and briefs had already been filed in the other cause number." Irrespective of her intent, Mrs. Sherk has not complied with the rules governing appeals.

The district court was correct in affirming the bankruptcy court's order on this basis.

### B. *The district court erred in imposing sanctions on Mrs. Sherk and her attorney.*

The district court sanctioned Mrs. Sherk and her attorney pursuant to Fed.R.Civ.P. 11, Fed.R.App.P. 38, and Bankruptcy Rule 8018, ordering her to pay the attorney's fees incurred by Texas Bankers in its appeal from the bankruptcy court to the district court. We review this decision for abuse of discretion. *See Thomas v. Capital Security Services Inc.*, 836 F.2d 866, 872 (5th Cir.1988). Because we find that the district court abused its discretion in awarding sanctions against Mrs. Sherk and her attorney, we REVERSE the award of sanctions.

The district court ordered sanctions for the following reasons:

1. because the appeal is frivolous;

2. because the filing of the state action violated the automatic stay;

3. because Sherk's briefs mischaracterized the law and the order appealed from and made meritless arguments; and

4. because Sherk voluntarily dismissed her only effective appeal.

Mrs. Sherk argues that the district court did not have the power to sanction her under Rule 11, 11 U.S.C. § 362(h), and Fed.R.App.P. 38. We see no need to address these arguments in detail because we hold that a district court has the power to impose sanctions for a frivolous bankruptcy appeal based upon either the inherent power of the judiciary or the statutory authority of 28 U.S.C. § 1927. *See In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir.1987); *In re Stalter*, 99 B.R. 327, 331–32 (E.D.La.1989).

We consider Mrs. Sherk's exemption argument not sufficiently frivolous as to merit sanctions. Nor do we think she willfully violated the automatic stay. *See* 11 U.S.C. § 362(h). Indeed, other courts have held that any exemption which is listed by the debtor on his exemption schedule, and which is not timely objected to, is a valid exemption; therefore, the property reverts to the debtor and is no longer property of the estate and cannot be subject to the automatic stay. *See In re Hahn*, 60 B.R. 69, 73 (Bankr.D.Minn.1985). Mrs. Sherk's argument attempts to apply this reasoning to allow the exemption of a *claim* for homestead property exempt under state law. This was arguable.

We instruct Mrs. Sherk's attorney to be more careful in his citation of cases, but we decline to impose sanctions for what appears a bad habit in this case of citing overruled cases. Accordingly, we REVERSE on the issue of sanctions.

### III

For the reasons stated, we AFFIRM the district court's denial of Sherk's Motion to Remand and the dismissal of her case. We REVERSE the district court's award of sanctions against Sherk and her attorney.