# TAYLOR *v.* FREELAND & KRONZ ET AL.

No. 91–571.   Argued March 2, 1992—Decided April 21, 1992

Thomas, J., delivered the opinion of the Court, in which Rehnquist, C. J., and White, Blackmun, O'Connor, Scalia, Kennedy, and Souter, JJ., joined. Stevens, J., filed a dissenting opinion, *post*, p. 646.

*Timothy B. Dyk* argued the cause for petitioner. With him on the briefs were *Stephen J. Goodman, Peter M. Lieb,* and *Gary W. Short.*

*Phillip S. Simon* argued the cause for respondents. With him on the brief was *Kenneth P. Simon.**

JUSTICE THOMAS delivered the opinion of the Court.

Section 522(*l*) of the Bankruptcy Code requires a debtor to file a list of the property that the debtor claims as statutorily exempt from distribution to creditors. Federal Rule of Bankruptcy Procedure 4003 affords creditors and the bankruptcy trustee 30 days to object to claimed exemptions. We must decide in this case whether the trustee may contest the validity of an exemption after the 30-day period if the debtor had no colorable basis for claiming the exemption.

---

*Gary Klein and Daniel L. Haller filed a brief for the Mon Valley Unemployed Committee et al. as amici curiae urging affirmance.

## I

The debtor in this case, Emily Davis, declared bankruptcy while she was pursuing an employment discrimination claim in the state courts.  The relevant proceedings began in 1978 when Davis filed a complaint with the Pittsburgh Commission on Human Relations.  Davis alleged that her employer, Trans World Airlines (TWA), had denied her promotions on the basis of her race and sex.  The Commission held for Davis as to liability but did not calculate the damages owed by TWA.  The Pennsylvania Court of Common Pleas reversed the Commission, but the Pennsylvania Commonwealth Court reversed that court and reinstated the Commission's determination of liability.  TWA next appealed to the Pennsylvania Supreme Court.

In October 1984, while that appeal was pending, Davis filed a Chapter 7 bankruptcy petition.  Petitioner, Robert J. Taylor, became the trustee of Davis' bankruptcy estate.  Respondents, Wendell G. Freeland, Richard F. Kronz, and their law firm, represented Davis in the discrimination suit.  On a schedule filed with the Bankruptcy Court, Davis claimed as exempt property the money that she expected to win in her discrimination suit against TWA.  She described this property as "Proceeds from lawsuit—[Davis] v. TWA" and "Claim for lost wages" and listed its value as "unknown." App. 18.

Performing his duty as a trustee, Taylor held the required initial meeting of creditors in January 1985.  See 11 U. S. C. § 341; Fed. Rule Bkrtcy. Proc. 2003(a).  At this meeting, respondents told Taylor that they estimated that Davis might win $90,000 in her suit against TWA.  Several days after the meeting, Taylor wrote a letter to respondents telling them that he considered the potential proceeds of the lawsuit to be property of Davis' bankruptcy estate.  He also asked respondents for more details about the suit.  Respondents described the procedural posture of the case and expressed optimism that they might settle with TWA for $110,000.

Taylor decided not to object to the claimed exemption. The record reveals that Taylor doubted that the lawsuit had any value. Taylor at one point explained: "I have had past experience in examining debtors . . . [.] [M]any of them . . . indicate they have potential lawsuits. . . . [M]any of them do not turn out to be advantageous and . . . many of them might wind up settling far within the exemption limitation." App. 52. Taylor also said that he thought Davis' discrimination claim against TWA might be a "nullity." *Id.*, at 58.

Taylor proved mistaken. In October 1986, the Pennsylvania Supreme Court affirmed the Commonwealth Court's determination that TWA had discriminated against Davis. In a subsequent settlement of the issue of damages, TWA agreed to pay Davis a total of $110,000. TWA paid part of this amount by issuing a check made to both Davis and respondents for $71,000. Davis apparently signed this check over to respondents in payment of their fees. TWA paid the remainder of the $110,000 by other means. Upon learning of the settlement, Taylor filed a complaint against respondents in the Bankruptcy Court. He demanded that respondents turn over the money that they had received from Davis because he considered it property of Davis' bankruptcy estate. Respondents argued that they could keep the fees because Davis had claimed the proceeds of the lawsuit as exempt.

The Bankruptcy Court sided with Taylor. It concluded that Davis had "no statutory basis" for claiming the proceeds of the lawsuit as exempt and ordered respondents to "return" approximately $23,000 to Taylor, a sum sufficient to pay off all of Davis' unpaid creditors. *In re Davis*, 105 B. R. 288 (Bkrtcy. Ct. WD Pa. 1989). The District Court affirmed, *In re Davis*, 118 B. R. 272 (WD Pa. 1990), but the Court of Appeals for the Third Circuit reversed, 938 F. 2d 420 (1991). The Court of Appeals held that the Bankruptcy Court could not require respondents to turn over the money because Davis had claimed it as exempt, and Taylor had failed to

object to the claimed exemption in a timely manner. We granted certiorari, 502 U. S. 976 (1991), and now affirm.

## II

When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. See 11 U. S. C. § 541. The Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d). Section 522*(l)* states the procedure for claiming exemptions and objecting to claimed exemptions as follows:

> "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt."

Although § 522*(l)* itself does not specify the time for objecting to a claimed exemption, Federal Rule of Bankruptcy Procedure 4003(b) provides in part:

> "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) . . . unless, within such period, further time is granted by the court."

In this case, as noted, Davis claimed the proceeds from her employment discrimination lawsuit as exempt by listing them in the schedule that she filed under § 522*(l)*. The parties agree that Davis did not have a right to exempt more than a small portion of these proceeds either under state law or under the federal exemptions specified in § 522(d). Davis in fact claimed the full amount as exempt. Taylor, as a result, apparently could have made a valid objection under § 522*(l)* and Rule 4003 if he had acted promptly. We hold, however, that his failure to do so prevents him from challenging the validity of the exemption now.

## A

Taylor acknowledges that Rule 4003(b) establishes a 30-day period for objecting to exemptions and that §522*(l)* states that "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." He argues, nonetheless, that his failure to object does not preclude him from challenging the exemption at this time. In Taylor's view, §522*(l)* and Rule 4003(b) serve only to narrow judicial inquiry into the validity of an exemption after 30 days, not to preclude judicial inquiry altogether. In particular, he maintains that courts may invalidate a claimed exemption after expiration of the 30-day period if the debtor did not have a good-faith or reasonably disputable basis for claiming it. In this case, Taylor asserts, Davis did not have a colorable basis for claiming all of the lawsuit proceeds as exempt and thus lacked good faith.

Taylor justifies his interpretation of §522*(l)* by arguing that requiring debtors to file claims in good faith will discourage them from claiming meritless exemptions merely in hopes that no one will object. Taylor does not stand alone in this reading of §522(b). Several Courts of Appeals have adopted the same position upon similar reasoning. See *In re Peterson*, 920 F. 2d 1389, 1393–1394 (CA8 1990); *In re Dembs*, 757 F. 2d 777, 780 (CA6 1985); *In re Sherk*, 918 F. 2d 1170, 1174 (CA5 1990).

We reject Taylor's argument. Davis claimed the lawsuit proceeds as exempt on a list filed with the Bankruptcy Court. Section 522*(l)*, to repeat, says that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days "unless, within such period, further time is granted by the court." The Bankruptcy Court did not extend the 30-day period. Section 522*(l)* therefore has made the property exempt. Taylor cannot contest the ex-

emption at this time whether or not Davis had a colorable statutory basis for claiming it.

Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption. If Taylor did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, see Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, see Rule 4003(b). Having done neither, Taylor cannot now seek to deprive Davis and respondents of the exemption.

Taylor suggests that our holding will create improper incentives. He asserts that it will lead debtors to claim property exempt on the chance that the trustee and creditors, for whatever reason, will fail to object to the claimed exemption on time. He asserts that only a requirement of good faith can prevent what the Eighth Circuit has termed "exemption by declaration." *Peterson, supra,* at 1393. This concern, however, does not cause us to alter our interpretation of §522(*l*).

Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, *e. g.,* 11 U. S. C. §727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U. S. C. §152 (imposing criminal penalties for fraud in bankruptcy cases). These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will

follow our decision. We have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith.

## B

Taylor also asserts that courts may consider the validity of the exemption under a different provision of the Bankruptcy Code, 11 U. S. C. § 105(a), despite his failure to object in a timely manner. That provision states:

> "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. *No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action* or making any determination necessary or appropriate to enforce or implement court orders or rules, or *to prevent an abuse of process.*" *Ibid.* (emphasis added).

Although Taylor stresses that he is not asserting that courts in bankruptcy have broad authorization to do equity in derogation of the Code and Rules, he maintains that § 105 permits courts to disallow exemptions not claimed in good faith. Several courts have accepted this position. See, *e. g., Ragsdale* v. *Genesco, Inc.,* 674 F. 2d 277, 278 (CA4 1982); *In re Staniforth,* 116 B. R. 127, 131 (Bkrtcy. Ct. WD Wis. 1990); *In re Budinsky,* No. 90–01099, 1991 WL 105640 (WD Pa., June 10, 1991).

We decline to consider § 105(a) in this case because Taylor raised the argument for the first time in his opening brief on the merits. Our Rule 14.1(a) makes clear that "[o]nly the questions set forth in the petition [for certiorari], or fairly included therein, will be considered by the Court," and our Rule 24.1(a) states that a brief on the merits should not "raise additional questions or change the substance of the questions already presented" in the petition. See *Yee* v. *Escondido,* 503 U. S. 519, 535 (1992). In addition, we have

said that "[o]rdinarily, this Court does not decide questions not raised or resolved in the lower court[s]." *Youakim* v. *Miller*, 425 U. S. 231, 234 (1976) *(per curiam)*. These principles help to maintain the integrity of the process of certiorari. Cf. *Oklahoma City* v. *Tuttle*, 471 U. S. 808, 816 (1985). The Court decides which questions to consider through well-established procedures; allowing the able counsel who argue before us to alter these questions or to devise additional questions at the last minute would thwart this system. We see no "unusual circumstances" that warrant addressing Taylor's § 105(a) argument at this time. *Berkemer* v. *McCarty*, 468 U. S. 420, 443, n. 38 (1984).

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE STEVENS, dissenting.

The Court states that it has "no authority to limit the application of § 522*(l)* to exemptions claimed in good faith." *Ante*, at 645. It does not deny, however, that it has ample authority to hold that the doctrine of equitable tolling applies to the 30-day limitations period in Federal Rule of Bankruptcy Procedure 4003(b).[1] In my view, such a result is supported not only by strong equitable considerations, but also by the common law, the widespread practice of the bankruptcy courts, and the text of § 522(b).

I

Rule 4003, which is derived from § 522*(l)* of the Code and in part from former Bankruptcy Rule 403, shifted the em-

---

[1] Rule 4003(b) provides:

"The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person."

phasis of the earlier Rule, placing the burden on the debtor to list her exemptions and the burden on the parties in interest to raise objections. Rule 4003(b) in particular fills a gap that remains in § 522*(l)*, which is silent as to the time in which parties in interest must file their objections. Rule 4003(b) provides for a 30-day period for objections. Although the adoption of Rule 4003 has furthered the interest in orderly administration, there is no suggestion that it was put into effect in order to avoid prejudice to the debtor. Thus, there is no identifiable reason why ordinary tolling principles that apply in other contexts should not also apply in bankruptcy proceedings; indeed, the generally equitable character of bankruptcy makes it especially appropriate to apply such rules in this context.

It is familiar learning that the harsh consequences of federal statutes of limitations have been avoided at times by relying on either fraudulent concealment or undiscovered fraud to toll the period of limitation. For example, in *Bailey* v. *Glover*, 21 Wall. 342, 349–350 (1875), the Court described two situations in which the "strict letter of general statutes of limitation" would not be followed, *id.*, at 347. The first situation is "where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts," and the second is "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part." *Id.*, at 347–348. The former involves fraudulent concealment; the latter defines undiscovered fraud. The Court concluded in *Bailey* that fraudulent concealment, which was at issue in that case, tolls the running of the statute of limitations when the fraud "has been concealed, or is of such character as to conceal itself." *Id.*, at 349–350. To hold otherwise, reasoned the Court, would "make the law which was designed to prevent fraud the means by which it is made successful and secure." *Id.*, at 349. In *Holmberg* v. *Armbrecht*, 327 U. S. 392, 397 (1946), the Court extended the reach of this tolling doctrine when

it observed that it is to be "read into every federal statute of limitation." [2]

In this case, even if there was no fraud, and even if it is assumed that the trustee failed to exercise due diligence, it remains true that the parties injured by the trustee's failure to object within the 30-day period are innocent creditors. Moreover, it is apparently undisputed that there was no legitimate basis for the claim of an exemption for the entire award. See *ante*, at 642. Under these circumstances, unless the debtor could establish some prejudice caused by the trustee's failure to object promptly, I would hold that the filing of a frivolous claim for an exemption is tantamount to fraud for purposes of deciding when the 30-day period begins to run.

## II

This, in essence, is also the position adopted by numerous Bankruptcy Courts and three Courts of Appeals.[3] Over a period of years, they have held that the failure to make a timely objection is not dispositive, Rule 4003(b) notwithstanding. For example, in *In re Hackett*, 13 B. R. 755, 756 (Bkrtcy. Ct. ED Pa. 1981), the court explained that "[e]quita-

---

[2] The tolling of a statute of limitations is not limited to cases of fraud. In medical malpractice suits, for example, this Court has long endorsed the view that the statute of limitations will not bar the claim of one who was "blameless[ly] ignoran[t]" of his injury; rather, the statute of limitations will not begin to run until he has knowledge of his injury. *Urie* v. *Thompson*, 337 U. S. 163, 170 (1949).

[3] Some Bankruptcy Courts, however, have read the statute and Rule narrowly and have refused to examine any exemption in the absence of a timely objection. See, *e. g.*, *In re Bradlow*, 119 B. R. 330, 331 (Bkrtcy. Ct. SD Fla. 1990); *In re Duncan*, 107 B. R. 754 (Bkrtcy. Ct. WD Okla. 1988); *In re Payton*, 73 B. R. 31, 32 (Bkrtcy. Ct. WD Tex. 1987); *In re Kretzer*, 48 B. R. 585, 587 (Bkrtcy. Ct. Nev. 1985); *In re Gullickson*, 39 B. R. 922 (Bkrtcy. Ct. WD Wis. 1984). Although the court in *In re Hawn*, 69 B. R. 567 (Bkrtcy. Ct. ED Tenn. 1987), took a similar view, it at least recognized that the result might be different if there had been "evidence that the debtor fraudulently or negligently concealed any facts from the trustee or any creditors." *Id.*, at 568.

ble considerations dictate that a debtor should not be allowed exemptions to which she is obviously not entitled." This view was echoed in *In re Rollins*, 63 B. R. 780, 783–784 (Bkrtcy. Ct. ED Tenn. 1986): "[T]he debtor cannot make property exempt simply by claiming it as exempt when there is no apparent legal basis for the exemption. In that situation, the trustee's failure to object to the claim of exemption within the time limit of Rule 4003(b) does not create an exemption." More recently, the court in *In re Ehr*, 116 B. R. 665, 667 (Bkrtcy. Ct. ED Wis. 1988), reaffirmed this approach, as did the court in *In re Staniforth*, 116 B. R. 127, 130 (Bkrtcy. Ct. WD Wis. 1990). As one court explained: "Read strictly, Rule 4003 and Section 522*(l)* support appellants' position concerning waiver. But, most courts have not followed appellants' interpretation of these provisions. Instead, most courts hold that an exemption must have an apparent legal basis for an exemption to overcome an untimely objection." *In re Stutterheim*, 109 B. R. 1010, 1012 (Kan. 1989).

The equitable principles that motivated these Bankruptcy Courts are best encapsulated by the court in *In re Bennett*, 36 B. R. 893 (Bkrtcy. Ct. WD Ky. 1984). There, the court explained that to apply Rule 4003(b) rigidly would be to encourage a debtor to claim that all of her property was exempt, thus leaving it to the trustee and creditors to sift through the myriad claimed exemptions to assess their validity. Such a policy would result in reversion to "the law of the streets, with bare possession constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy." *Id.*, at 895.[4]

---

[4] Bankruptcy courts would understandably be reluctant to encourage a policy that would contribute to the overburdening of the bankruptcy court system. As counsel for the trustee explained: "Last year there were 880,000 bankruptcy filings, 291 bankruptcy judges to deal with all of those filings, and a real need on the part of the bankruptcy courts to rely on the

Although several Courts of Appeals and Bankruptcy Courts did not go as far as these courts, preferring instead in the case of an untimely objection to examine a claimed exemption to determine if there was a "good-faith statutory basis" for the exemption, they nevertheless eschewed the literal reading of the statute and rule adopted by the Court today. They did so because they believed it was important to strike a proper balance between avoiding the undesirable effect of "exemption by declaration" and yet not permitting a trustee "another bite at the debtor's apple where the debtor has claimed certain property exempt in good faith." *In re Peterson*, 920 F. 2d 1389, 1393–1394 (CA8 1990); see *In re Sherk*, 918 F. 2d 1170, 1174 (CA5 1990); *In re Dembs*, 757 F. 2d 777, 780 (CA6 1985).

Here, the trustee would succeed under either approach. Whether the court is always permitted to entertain an objection to a claimed exemption (at least until the case is closed)[5] when the claimed exemption is invalid or whether the court can do so only if the claimed exemption lacks a good-faith statutory basis would mean that in this case the court could review the debtor's claimed exemption. Here, the parties acknowledge that the debtor could not claim a statutory basis for her claimed exemption for the full award because neither backpay nor tort recovery is exempt under § 522(d)(5).

## III

The practice of these lower courts has been motivated not only by equitable considerations, but also by the requirement set forth in § 522(b). Section 522*(l)* explicitly provides that "[t]he debtor shall file a list of property that the debtor

---

good faith of debtors in claiming exemptions, otherwise the whole system would collapse." Tr. of Oral Arg. 13. For example, this trustee alone "had approximately two or three hundred of these cases a year, which . . . is typical of bankruptcy trustees all across the country." *Id.*, at 15.

[5] The parties have stipulated that the debtor's case has never been closed. App. 56.

claims as exempt under subsection (b) of this section." Subsection (b) limits exemptions claimed by the debtor to "any property that is exempt under federal law . . . or State or local law that is applicable on the date of the filing of the petition." 11 U. S. C. § 522(b)(2)(A). When a debtor claims exemptions that do not even arguably satisfy this condition,[6] there is good reason to hold that the filing does not comply with § 522 and therefore the 30-day objection period does not begin to run. As one court noted: "If Debtor may select in any manner her exemptions, then no purpose is served by the inclusion of the . . . terms." *In re Kingsbury*, 124 B. R. 146, 148, n. 9 (Bkrtcy. Ct. Me. 1991). It declined to conclude that Congress added the requirements that the property be exempted "under federal law . . . or state law or local law" but "refused to grant them meaning." *Ibid.* (emphasis omitted).

## IV

The Court's disposition of this case is straightforward. Because it regards the meaning of the statute and Rule as "plain," that is the end of the case. I have no doubt, however, that if the debtor or the trustee were guilty of fraud, the Court would readily ignore what it now treats as the insurmountable barrier of "plain meaning." The equities in this case are not as strong as if fraud were implicated, but our power to reach a just result despite the "plain meaning" barrier is exactly the same as it was in *Bailey* v. *Glover*, 21

---

[6] The debtor's claimed exemptions in this case not only failed to satisfy any statutory basis, but also failed to provide even the basic information necessary to inform the trustee adequately about the exemption. For example, the debtor indicated on her Schedule B–4 Property Claimed As Exempt form that she was claiming the "[p]roceeds from lawsuit," but that the value was "unknown." App. 14–15. Although the value of the full award ended up amounting to $110,000, and only an amount of approximately $24,000 was required to satisfy the claims of all of her creditors, the debtor never amended her schedule to reflect the precise value of the award.

Wall. 342 (1875). Here, as in *Bailey*, we should be guided by the common-law principles that have supported the tolling of other statutes of limitations, and, in addition, by the experience of bankruptcy courts that have recognized the need for a similar rule to achieve both equitable results and fair administration in cases of this kind. In my view, it is a mistake to adopt a "strict letter" approach, *id.*, at 347, when justice requires a more searching inquiry. Accordingly, I respectfully dissent.