**In re Anneliese COOLBAUGH, Debtors.**

**No. 99–23706.**

United States Bankruptcy Court, W.D. New York.

July 6, 2000.

7. By "too high," we mean too high for the estate. See footnotes, above.

John F. McKeown, Canandaigua, NY, for debtor.

Lucien A. Morin, II, McConville, Considine, Cooman & Morin, P.C., Rochester, NY, Chapter 7 Trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On November 30, 1999, Anneliese Coolbaugh (the "Debtor") filed a petition initi-

ating a Chapter 7 case. On November 30, 1999, the Debtor filed the Schedules and Statements required by Section 521 and Rule 1007 which: (1) indicated that she had equity of $5,500.00 in her residence, located at 23 University Avenue, North Cohocton, New York (the "Homestead Equity"); (2) indicated that when she filed her petition she had cash-on-hand of $110.00 (the "Cash–On–Hand") and $344.81 on deposit in a checking account; and (3) on Schedule C, claimed the Homestead Equity as exempt.

At her Section 341 Meeting of Creditors, the Debtor's trustee, Lucien A. Morin, II (the "Trustee"): (1) determined that the Debtor expected to receive Federal and New York State 1999 income tax refunds of approximately $640.00 (the "Tax Refunds"); (2) in accordance with this Court's Decision & Order in *In re Hunter* (Case No. 98–24955, issued December 10, 1999) ("Hunter"),[1] advised the Debtor that he was entitled to a pro rata portion of the Tax Refunds, which he determined was $588.63; (3) learned that there was actually $752.35 on deposit in the Debtor's checking account when she filed her petition; and (4) since the Debtor had claimed the available New York State Homestead Exemption and could not claim an otherwise available cash exemption of up to

$2,500.00,[2] demanded that she turn over to him, as Trustee, the Cash–On–Hand and the amount on deposit in her checking account at the time of the filing of her petition, as well as the pro rata portion of her Tax Refunds which under *Hunter* he could administer as property of the estate.

On April 18, 2000, the Trustee filed a motion (the "Turnover Motion") which asserted that: (1) since the Debtor had claimed the available New York State Homestead Exemption pursuant to CPLR Section 5206, she could not claim an otherwise available cash exemption of up to $2,500.00 pursuant to DCL Section 283; and (2) despite his demand, the Debtor had failed to turnover to him, as Trustee, the Cash–On–Hand and amount on deposit in her checking account at the time of the filing of her petition as well as a pro rata portion of her Tax Refunds.

On May 2, 2000, the Debtor filed amended schedules which: (1) amended her Schedule B to indicate the actual amount on deposit in her checking account at the time of the filing of her petition was $752.35 (the "Checking Balance"); and (2) amended her Schedule C to claim the Cash–On–Hand and the Checking Balance as exempt earnings pursuant to CPLR Section 5205(d)(2).[3]

---

1. The Court's Decision & Order in *Hunter* was issued on December 10, 1999, after the Debtor filed her petition on November 30, 1999 and shortly before her Section 341 Meeting of Creditors, which was conducted on January 28, 2000. In accordance with the weight of legal authority, *Hunter* held that a pro rata portion of a debtor's income tax refunds were property of the bankruptcy estate even if the debtor's petition was filed during but prior to the close of the taxable year in question. Prior to the Decision in *Hunter*, the Panel of Trustees and the attorneys for debtors and creditors proceeded under a "policy" that no portion of an income tax refund was property of the estate if a debtor filed during but prior to the close of the taxable year in question.

At the time the Court issued its Decision in *Hunter*, it did not make its holding prospective because: (1) the holding was in accordance with the clear weight of legal authority; and (2) all of the input the Court received surrounding the *Hunter* matter indicated that

the "policy" was not in any way the result of a decision made by the Bankruptcy Court for the Rochester Division of the Western District of New York, and the Court had not directly or indirectly endorsed the "policy." For those same reasons, the holding in *Hunter* is applicable to the Debtor's case.

2. *See* New York Civil Practice Law and Rules (the "CPLR") Section 5206 and New York Debtor and Creditor Law (the "DCL") Section 283.

3. CPLR Section 5205(d)(2) provides that:

(d) Income exemptions. The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:

2. ninety per cent of the earnings of the judgment debtor for his personal services

On May 3, 2000, the Debtor interposed "Opposition" to the Turnover Motion which asserted that: (1) as set forth in her Amended Schedule C, the Checking Balance was exempt because it was part of the ninety percent of the wages she earned for personal services rendered within sixty days of the filing of her petition; and (2) this "Earnings Exemption" was a separate exemption from the cash exemption provided for by CPLR Section 5205 and DCL Section 283 and was not limited by the $2,500.00 cap set forth in DCL Section 283.[4]

On May 24, 2000, the Trustee filed an objection motion (the "Exemption Motion") in connection with the Debtor's claim of an Earnings Exemption for the Checking Balance, which asserted that, the Earnings Exemption provided for by CPLR Section 5205(d)(2) was not available to a New York debtor who also claimed a homestead exemption pursuant to CPLR Section 5206.[5] On May 26, 2000, the Debtor interposed an "Answer" to the Exemption Motion which set forth the same arguments that were contained in her Opposition.

On June 9, 2000, the Trustee filed a Letter Memorandum in support of his Turnover Motion and Exemption Motion, which: (1) urged the Court to follow the decisions of a number of bankruptcy cases, including *In re Schlein*, 114 B.R. 780 (Bankr.M.D.Fla.1990), which held that once a debtor commingles earnings in a general bank account with other deposits, those funds lose their exempt status; and

> rendered within sixty days before, and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment[.]
>
> N.Y. CPLR § 5205(d)(2) (2000).

4. The Opposition did not address the Cash–On–Hand.

5. The Exemption Motion also did not specifically address the Cash–On–Hand.

6. Such a policy is not uncommon throughout much of the Bankruptcy System.

(2) preserved any argument he might have that all or a portion of the Checking Balance was unnecessary for the reasonable requirements of the Debtor, a limitation to the Earnings Exemption specifically set forth in CPLR Section 5205(d)(2).

## DISCUSSION

### I *Overview*

This Court's Decision in *Hunter*, which held that a pro rata portion of a debtors' income tax refunds could be administered as property of the estate, when combined with a policy of the Panel of Trustees in the Rochester Division of the Western District of New York to in many cases not administer available non-exempt assets under a certain dollar amount when a Trustee believes that the administration of those assets would not be cost beneficial,[6] has resulted in debtors requesting that the Court decide a number of exemption issues that were never addressed by it in the past.

If the Court's Decision & Order in *Hunter* had not been decided while the Debtor's case was still being administered, it is likely that because of the "cost beneficial policy," the Trustee would not have pursued the Cash–On–Hand or the Checking Balance, if the balance had been $344.81 as originally scheduled. In that case, the question of the availability of the Earnings Exemption would never have been raised.[7]

7. The "cost beneficial policy" may result in confusion on the part of some debtors when non-exempt assets they thought they could retain are required to be turned over to a trustee. For example, it is possible that at the time of the filing of her petition it had been represented to the Debtor by her attorney that even though because she had claimed a Homestead Exemption she could not formally exempt the Cash–On–Hand and Checking Balance, it was likely that she would be able to retain those assets due to the "cost beneficial policy." If this representation was made, it may have been difficult for the Debtor to understand why she could not retain those assets when the Trustee determined that her

## II *The Availability of an Earnings Exemption in Bankruptcy*

In his decision in *In re Maidman*, 141 B.R. 571 (Bankr.S.D.N.Y.1992) ("*Maidman*"), Bankruptcy Judge Conrad set forth a detailed analysis of the same legal issues which are before this Court, and held that: (1) an individual New York debtor can exempt earnings pursuant to DCL Section 282 and CPLR Section 5205(d)(2), even if that debtor also claims a New York State Homestead Exemption pursuant CPLR Section 5206; and (2) the cash exemption of up to $2,500.00 provided for by DCL Section 283 does not apply to or otherwise limit the Earnings Exemption.

 I agree with the analysis and holding in *Maidman*, so that the Debtor in this case can exempt the Checking Balance if: (1) after application of the presumptions set forth in this Decision & Order, she can demonstrate that those monies represent a portion of the ninety percent (90%) of her earnings for personal services she rendered within sixty days of the filing of her petition;[8] and (2) the Trustee does not prove that all or any portion of the Balance is unnecessary for her reasonable requirements.

From the facts and circumstances of this case and the discussions at oral argument, it is clear that establishing guidelines for its implementation are just as important as the holding that: (1) an Earnings Exemption pursuant to Section 5205(d)(2) is available to an individual debtor who also claims a Homestead Exemption; and (2) the Earnings Exemption is separate from the cash exemption provided for by DCL Section 283, and the $2,500.00 limit set forth in that Section does not apply.

 Therefore, in connection with any claim of an Earnings Exemption, this Court will: (1) require a debtor claiming an Earnings Exemption to: (a) provide proof of all earnings from personal services rendered within sixty days of the filing of the petition; and (b) if the Earnings Exemption is claimed in amounts on deposit in a financial institution, provide proof: (i) that the earnings were deposited into the account; and (ii) of the balance on deposit in the account on day sixty-one before the filing of the petition;[9] (2) presume that any amount on deposit in the account at day sixty-one before the filing of the petition are the last amounts out of the account; (3) presume that ten percent of the debtor's earnings for services rendered within sixty days of the filing of the petition are the second to the last amounts out of the account; and (4) presume that any amounts deposited into the account within the sixty days before the filing of

---

bankruptcy estate, which now included the Tax Refunds, Cash–On–Hand and Checking Balance, warranted administration. This kind of surprise can occur in other cases where a Trustee departs from the "cost beneficial policy" because: (1) he discovers unscheduled assets; (2) he finds that assets are of greater value than scheduled; or (3) he avoids preferential transfers or fraudulent conveyances and, as a result, unanticipated funds are brought into the estate for administration.

**8.** The initial burden of proof that a debtor is entitled to an exemption rests on the debtor. The debtor must file schedules of assets, liabilities, income, expenses and a statement of financial affairs pursuant to Section 522(1). These schedules and statements must specifically list the assets, income, etc. The debtor can file a schedule of exempt property. Rule

1007. The exempt property must have been listed in the assets schedules, since the purpose of an exemption is to remove an asset from the reach of creditors. Rule 4003(a). *See e.g. In re de Kleinman*, 172 B.R. 764 (Bankr.S.D.N.Y.1994); *In re Gregoire*, 210 B.R. 432 (Bankr.D.R.I.1997).

**9.** Although Rule 4003(c) places the burden of proof on an objecting party to demonstrate that an exemption has not been properly claimed, Courts have uniformly held that once the objecting party presents a *prima facie* case that the exemption has been improperly claimed, the burden then shifts back to the debtor to come forward with evidence to demonstrate that the exemption is proper. *See In re Lester*, 141 B.R. 157 (S.D.Ohio 1991); *In re Gregory*, 245 B.R. 171 (10th Cir. BAP 2000).

the petition from sources other than earnings for personal services rendered within sixty days of the filing of the petition are the third to last amounts out of the account. As a result, the Trustee and a debtor's estate will generally be entitled to the lesser of: (1) the amounts on deposit in the account on day sixty-one, ten percent of the debtor's earnings for services rendered within sixty days of the date of the filing of the petition and all non-earnings deposited into the account within sixty days of the filing of the petition; or (2) the amount on deposit in the account as of the date of filing.

The above presumptions make it unnecessary to directly address the Trustee's commingling argument and provide a fair and reasonable balance between the underlying policy of exemptions, to allow a debtor to retain some level of assets necessary to maintain a basic lifestyle, and the policies of: (1) CPLR Section 5205(d)(2) that addresses a non-bankruptcy situation where a judgment creditor executes on earnings, and insures that the executing judgment creditor receives ten percent of the debtor's wages off the top, as well as any additional amounts that may be unnecessary for the debtor's reasonable requirements; and (2) the Bankruptcy Code where a Chapter 7 debtor surrenders all non-exempt assets in exchange for a discharge.[10]

At the hearing on the Turnover Motion and Exemption Motion, it was determined that there was $330.00 on deposit in the Debtor's checking account on day sixty-one before the filing of the petition and that ten percent of the Debtor's earnings from personal services rendered within sixty days of the date of the filing of the petition was $270.00. Based upon those determinations and the previously described presumptions, the Court ruled that the Tax Refunds of $588.63, the amount on deposit

in the checking account at day sixty-one in the amount of $330.00 and ten percent of the Debtor's earnings for services rendered within sixty days before the filing of the petition in the amount of $270.00 must be turned over to the Trustee.[11]

At the close of the hearing on the Turnover Motion and the Exemption Motion, the Trustee indicated that: (1) based upon the facts and circumstances of this particular case, he waived any argument that any of the Checking Balance was unnecessary for the Debtor's reasonable requirements; and (2) he believed that it would be helpful to the Panel of Trustees if the Court would issue a written Decision & Order in connection with this matter.

### CONCLUSION

The Debtor, within ten (10) days of the date of this Decision & Order, will turnover to the Trustee: (1) $588.63, representing a pro rata portion of her Tax Refunds in accordance with *Hunter*; (2) $330.00, representing the amount on deposit in her checking account at day sixtyone before the filing of her petition; and (3) $270.00, representing ten percent of her earnings for personal services rendered within sixty days of the petition and deposited into her checking account.

**IT IS SO ORDERED.**

10. The discharge may be limited by the provisions of Sections 523 and 724.

11. The Cash–On–Hand was not addressed in the Opposition to the Turnover Motion nor was it specifically discussed at oral argument, so the Court assumes that it is also going to be turned over to the Trustee.