In re Kathleen W. WROBEL, Debtor.

In re Michael L. Mallia, Debtor.

Nos. 00–16168 K, 01–10487 K.

United States Bankruptcy Court,
W.D. New York.

Aug. 1, 2001.

Peter D. Grubea, Buffalo, NY, for the Debtor—Kathleen W. Wrobel.

William D. Scott, Buffalo, NY, for the Debtor—Michael L. Mallia.

Mark S. Wallach, Penney, Maier, Wallach & Crowe, Buffalo, NY, trustee.

MICHAEL J. KAPLAN, Bankruptcy Judge.

Consolidated for purposes of decision only are the Trustee's objections to two Debtors' claims of exemption in bank accounts alleged to be exempt (to the extent of 90% thereof) under New York Civil Practice Laws and Rules § 5205(d).[1]

The Debtors in these cases cite the cases of *In re Maidman*, 141 B.R. 571 (Bankr.S.D.N.Y.1992) and *In re Coolbaugh*, 250 B.R. 162 (Bankr.W.D.N.Y.2000) for the proposition that in addition to any other exemption which they may claim, including the $2500 cash exemption provided for by § 283 of the New York Debtor and Creditor Law, there is exempt 90% of any cash in the bank at the time of the filing of the petition, where that cash is directly traceable to personal service income within 60 days prior to the filing of the bankruptcy petition.

The *Coolbaugh* case adopts the reasoning of the *Maidman* case, and in the *Coolbaugh* case it appears that no-one asked the court to address the importance of the intervening Second Circuit Court of Appeals Decision in the case of *In re Dubroff*, 119 F.3d 75 (2nd Cir.1997). In *Dubroff*, the Circuit held in the same general context—interpreting the interplay between Debtor and Creditor Law § 282 and CPLR § 5205—that "Interpretation begins with the text of the statute. If the text is unambiguous, our task is at an end unless the text produces a manifestly absurd result, an exceptionally rare occurrence." *Id.* at 76.

*Maidman* was decided before *Dubroff.* The *Maidman* court, confronted with the argument that the text of CPLR § 5205(d), on its face, "only applies to the amount exempt for the purposes of satisfying a Sheriff's Income Execution and that it has no bearing on whether or not property is exempt from a debtor's estate" in bankruptcy, examined a pre-*Dubroff* case and reached the conclusion that to distinguish between a non-bankruptcy debtor and a bankruptcy debtor would "contradict the very spirit of § 5205(d)(2)," the purpose of which "is to provide for judgment and bankruptcy debtors alike the reasonable assurance that they will be able to support themselves and their families adequately during financial distress. It would certainly be contrary to the policy of the State to deprive a person, for the benefit

---

**1.** In pertinent part, § 5205(d) provides: "The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:

. . .

"2. ninety per cent of the earnings of the judgment debtor for his personal services rendered within sixty days before, and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment; ..." N.Y.C.P.L.R. 5205(d) (McKinney Supp. 2001)."

of a creditor, of income at least sufficient to meet the reasonable requirements of that person's own needs and those of his or her dependents. No such purpose can be imputed to the Legislature." *Maidman* at 573.

Once the Second Circuit decided *Dubroff,* such a leap to the legislation's "spirit" and "purpose" is impermissible when the text of the statute is unambiguous and is not "manifestly absurd."

Here, however, the statute is either ambiguous or, if viewed not to be so, is "manifestly absurd." If one takes § 5205(d) literally, as the Trustee sensibly is inclined to do in light of provisions such as CPLR § 5205(f) [2], one is led to a "manifestly absurd" result–there would be no exemption for wages earned but unpaid as of the time of the filing of a bankruptcy petition. One would have to quit work and pay next months rent before filing in order not to lose the fruits of the labors that were intended for payment of rent.

■ The Trustee also argues that this statute could be interpreted in such a way as to provide exemption for wages that are earned but unpaid, but not an exemption for wages that have been deposited in the bank. But this is an argument that requires that we *not* employ the literal language of the statute. The statute does not distinguish between "earnings" in hand and "earnings" not yet in hand or perhaps direct deposited in the debtor's bank account. So any literal application of CPLR § 5205(d) yields a manifestly absurd result, and, *Dubroff* permits resort to the legislative "spirit" and "purpose."

We are similarly led to that result if we conclude that the interplay of Debtor and Creditor Law § 282 and CPLR § 5205(d) yields an ambiguity. CPLR § 5205 is itself a non-bankruptcy exemption statute. By its very terms, it deals with enforcement of awards against "judgment debtors" and not all debtors who file for relief under Title 11 of the United States Code have ever had a judgment taken against them. Consequently, § 282's incorporation of CPLR § 5205 of necessity involves a process of separating the language from purpose, substance from style, and meaning from myth.

■ This writer agrees with the *Maidman* result because the only sensible reading of the integration of § 282 and CPLR § 5205 is to treat the filing of the petition as if it were an "execution" or "levy" against a "judgment debtor." (Indeed, that is precisely the construct manifested in 11 U.S.C. § 544, for example, giving a bankruptcy trustee the powers of a hypothetical judgment lien creditor whose execution has been returned unsatisfied.)

■ Chief Judge Ninfo's decision in *Coolbaugh* provides an administrative rule of convenience dealing with the commingling of wages with other monies in a bank account. This writer will adopt it as to "routine" cases, for the sake of uniformity within the District. Unusual cases of "traceability" of what is claimed to be "earnings within 60 days" before the filing of the petition may be brought before this Court on a case-by-case basis. Moreover, cases involving high income debtors (such as professionals), debtors who accumulate their earnings in sizeable bank accounts or who do not cash their pay checks, debtors whose "employers" are alter egos or whose

---

**2.** CPLR § 5205(f) states: "Ninety percent of any money or debt due to become due to the judgment debtor for the sale of milk produced on the farm operated by him and delivered for his account to a milk dealer licensed pursuant to Article 20–1 of the Agriculture and Market Law is exempt from application to the satisfaction of a money judgment." Notice that this exemption is not limited in time and is not linked in any way to any specific enforcement actions that might have been taken by a judgment creditor.

"earnings" may otherwise be contrived, debtors whose employers were themselves in financial trouble and who were not meeting regular payrolls (causing the debtor to run up some of the debts that the debtor now seeks to discharge), and other special cases, may still be addressed before this Court.

■ Finally, attorneys for debtors should be cautioned that "slap dash" filing serves no one's best interests. Almost all bankruptcy cases involving natural persons are voluntary cases, not involuntary cases. The time of the filing of a voluntary bankruptcy petition is petitioner's choice.[3] Any attorney who is knowledgeable regarding bankruptcy exemptions will engage in whatever pre-bankruptcy planning is necessary to assure that the debtor obtains maximum lawful benefit from all property that the debtor owns to which the debtor is entitled. Due care to such matters may involve counseling a client not to deposit wages, or to withdraw wages that have been "direct deposited," and to expend those wages for ordinary household needs just prior to the time that the petition is filed. A little pre-bankruptcy planning goes a long way.

■ One further argument must be addressed in the *Mallia* case. It is argued that the Trustee's objection to the claim of exemption was filed too late because Bankruptcy Rule 4003(b) and the case of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), command that the objection be filed within 30 days after the first meeting of creditors is concluded, and the 341 meeting in the *Mallia* case was concluded on March 2, 2001, while the Trustee's objection to the claim of exemption was filed on April 2, 2001. Applying the computation rules contained in Rule 9006, the Court finds that

the thirtieth day fell on Sunday, April 1, 2000, and that, consequently, the filing of the objection on Monday, April 2 was timely.

Similarly, in the *Wrobel* case it is argued that the Trustee did not file a formal objection to the Debtor's claim of exemption in the bank account within thirty days of the initial meeting of creditors. This argument overlooks the fact that a stipulation was filed in this case by which the Debtor agreed to an extension of time for the Trustee to object to a claim of exemption until the Debtor had fully complied with the Trustee's request for turnover of specific information pertaining to specific claims of exemption.

Counsel are directed to settle orders in these cases in accordance with the above.

SO ORDERED.

---

**3.** Although an attorney representing a debtor may have no "choice" and must file immediately if she is visited by a debtor on the morning of a foreclosure sale on the debtor's home, it was the client's "choice" to wait so long before consulting an attorney.