In re Edward **RODRIGUES,** Debtor.

No. 01–18049–JNF.

United States Bankruptcy Court, D. Massachusetts.

July 5, 2007.

Honoria DaSilva–Kilgore, Law Offices of Honoria DaSilva–Kilgore, Raynham, MA, for Debtor.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matters before the Court are two motions filed by James P. Long, Esq. ("Long"), as well as a motion filed by the Debtor, Edward Rodrigues (the "Debtor" or "Edward"). Long filed his motions, captioned "Creditors [sic] Motion to Reopen Debtors [sic] Petition" (the "Motion to Reopen") and "Creditors [sic] Motion to Remove Case to the Bankruptcy Court" (the "Motion to Remove") on April 25, 2007, seeking, *inter alia*, the reopening of the Debtor's Chapter 13 case, revocation of the Debtor's discharge, and the removal of

a case pending in the Suffolk County Probate and Family Court, Department of the Trial Court. In response to Long's motions, the Debtor filed a "Motion for Sanctions Pursuant to Bankruptcy Rule 9011 and for Intentional Violations of 11 U.S.C. § 524 against James P. Long" (the "Sanctions Motion").

The Court heard the motions on June 22, 2007 and took the matters under advisement. The issues presented are whether Long has standing to seek the relief he requests, and whether his actions warrant the imposition of sanctions. The material facts necessary to decide the motions are not in dispute, and no party requested an evidentiary hearing. Indeed, the procedural history of the Debtor's Chapter 13 case and this Court's prior orders are determinative of the outcome of Long's motions.

## II. FACTS

The Debtor filed a voluntary Chapter 13 petition on October 18, 2001. One week later, he filed his Schedules and Statement of Financial Affairs. On Schedule B–Personal Property, the Debtor listed, among other things, "ESOP, 401K, & Pension with Gillette Co. (ERISA qualified)," which he valued at $-0-, as well as an "IRA with Fidelity," which he valued at $11,501.00. Additionally, he listed a judgment in the sum of $7,428.40 involving the estate of Evelyn Rodrigues, which he also valued at $-0-. On Schedule C–Property Claimed As Exempt, the Debtor claimed the federal exemptions and specifically listed his IRA with Fidelity. On Schedule D–Creditors Holding Secured Claims, the Debtor listed Toyota Financial Services as the holder of hen secured by his automobile, and, on Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtor listed three creditors: Bankcard Services with a claim in the amount of $627; Greenbaum, Nagel, Fisher & Hamelburg with a claim in the sum of $6,000 for attorneys' fees; and Loretta Rodrigues, Guardian of Flora Rodrigues, c/o James P. Long, Esq., with a claim in the amount of $63,406.95 resulting from a judgment. On Schedules I and J–Current Income and Expenditures of Individual Debtor(s), the Debtor disclosed "Pension or retirement income" in the sum of $2,966.68, expenditures totaling $2,748, leaving excess monthly income of $217.98.

The Debtor's Statement of Financial Affairs contained additional information about his personal finances within the two year period immediately preceding the commencement of his Chapter 13 case. The Debtor disclosed the following income other than from employment or operation of a business:

| AMOUNT | SOURCE |
|---|---|
| $99,644.00 | 2000 IRA's |
| $16,404.00 | 2000 Pension |
| | |
| $60,213.00 | 1999 IRA's |
| $16,454.00 | 2000 Pension |

The Debtor filed a 36–month Chapter 13 plan pursuant to which he proposed to make his automobile loan payments directly to Toyota Financial Services and to pay a dividend of 10% to his unsecured creditors whose claims totaled $70,033.95.

On October 31, 2001, the Court issued a notice to the Debtor's creditors informing them of the section 341(a) meeting of creditors scheduled for November 27, 2001, as well as the February 25, 2002 deadline for filing proofs of claim. The Court's records show that the notice was mailed to Loretta Rodrigues, as Guardian of Flora Rodrigues, in care of her attorney, Long, at One Fellowship [sic] Place, Suite 3412, Boston Massachusetts.

Loretta Rodrigues, in her capacity as Guardian of Flora Rodrigues ("Loretta"), filed an Objection to confirmation of the

Debtor's Chapter 13 plan.[1] Long filed the Objection on Loretta's behalf listing his address as One Longfellow Place, Suite 3412, Boston, Massachusetts. In the Objection, neither Loretta nor Long argued notice was inadequate. Long, on Loretta's behalf, did, however, describe the circumstances which gave rise to the judgment as well as problems associated with the Debtor's proposed Chapter 13 plan.

According to the Debtor's sister, Loretta, Flora Rodrigues, who was 91 years old at the time the Objection was filed, depended upon her son, Edward, to manage her financial affairs after the death of her husband in 1974. Flora obtained $30,000 from her husband's estate, which the Debtor invested in a series of certificates of deposit. The interest on these investments provided Flora with income. At some point, prior to July 1994, Edward had his mother's name removed from a certificate of deposit and placed the certificate of deposit in his own name.

Flora was diagnosed with Alzheimer's Disease in 1996. Loretta stayed at home and cared for her mother, while her sister, Evelyn, who also lived in the family home, worked to support the household. Evelyn died in April of 1997, and, according to Loretta, one month later, Edward ceased remitting the interest earned on the certificates of deposit to his mother. That same month, Loretta was appointed Flora's guardian.

Loretta commenced an action against the Debtor in the Suffolk County Probate and Family Court to recover $30,000 and other money the Debtor allegedly took from his mother. In June of 2001, Loretta obtained a judgment in her capacity as Flora Rodrigues's guardian. According to Loretta, the Probate Court determined that the Debtor owed his mother $30,000, as well as $1,276.25 resulting from the commingling of his money with hers. Because the Probate Court also determined that the Debtor's defense was frivolous and violated Mass. Gen. Laws ch. 231, § 6F, it assessed $4,625 in legal fees and $78.65 in expenses against him. The award of those fees and expenses is the genesis of Long's protracted, but unsuccessful, efforts to assert a claim, in his individual capacity, against the Debtor.

In addition to arguing that the judgment was the result of the Debtor's conversion or theft of his mother's asset, Loretta argued that the value of property to be distributed under the Debtor's Chapter 13 plan on account of each allowed unsecured claim was less than the amount that would be paid on the claims if the estate were liquidated under Chapter 7, see 11 U.S.C. § 1325(a)(4), based upon the $876,106.57 alleged value of the Debtor's interest in "Gillette Company Employees' Savings Plan." Additionally, Loretta argued that the Debtor had not proposed his Chapter 13 plan in good faith, see 11 U.S.C. § 1325(a)(3), citing, inter alia, the Debtor's failure to disclose "his enormous retirement assets," as well as his failure to disclose "that *he owes the creditor* for his violation of M.G.L. Ch. 231 § 6f [sic]." (emphasis supplied).[2]

The Debtor responded to Loretta's Objection to confirmation of his Chapter 13 plan. Citing *Keach v. Boyajian (In re Keach)*, 243 B.R. 851, 868 (1st Cir. BAP 2000), he pointed out that "'Section 1328 expressly grants a debtor a discharge even if the debts result from conduct such as

---

**1.** From the pleadings filed with this Court, it is evident that Flora had four children: the Debtor, Loretta, Evelyn and Anthony.

**2.** Notably, Long subsequently filed a proof of claim asserting that the Debtor owed him the attorney fees and expenses in his individual capacity, not as counsel to Loretta.

fraud and hence are nondischargeable in Chapter 7.' " [3] Additionally, he stated that his ERISA-qualified pension plan was excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), and the Supreme Court's decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), thereby justifying the $-0- value ascribed to the asset on Schedule B. In short, the Debtor denied all of Loretta's allegations in the Objection filed on her behalf by Long.

On February 28, 2007, the Court heard the Objection to confirmation, at which time Loretta supplemented her original Objection by filing "Objections to the Confirmation of Debtors [sic] Chapter 13 Plan by Flora Rodrigues, by her Guardian Loretta Rodrigues." In that pleading, Loretta noted that the Administratrix of Evelyn's estate brought suit against the Debtor and his brother, Anthony, seeking to establish a trust over funds held by them for Flora Rodrigues's benefit, an action which was consolidated with the pending Probate Court action commenced by Loretta, which resulted in the judgment in her favor as her mother's guardian. Loretta, through her counsel, Long, set forth the following:

> The debtor has listed in his Schedule C the sum of $11,501 as an Exempt asset as it is claimed to be an IRA with Fidelity Investment. According to the records obtained from Fidelity Investments the debtor maintains and uses this account as a savings account through which he passes large sums of money. It is into this account that the debtor

deposited the $30,000 he wrongfully took from his mother. It is also the account where he deposited the money he received from his deceased sister which amounted to over $130,000. The debtor has withdrawn all but $11,501 of the $160,000 from the account. Since the money he deposited into this account was never earnings of the debtor, it should not have been deposited into a retirement account. The balance of the money that was improperly placed into the account is not exempt under the bankruptcy code and is available for payment to creditors.

At the conclusion of the hearing on February 28, 2002, the Court determined that Loretta's Objection to confirmation was a contested matter to which the Federal Rules of Bankruptcy Procedure should apply. The Court in a subsequent order directed the parties to file a Joint Pretrial Memorandum by May 10, 2002. In her original objection to confirmation, Loretta did not mention the Debtor's IRA with Fidelity. Long, on Loretta's behalf, raised that issue for the first time in his Supplemental Objections to Confirmation filed on February 28, 2002.[4]

Following the contested confirmation hearing, and over one month after the February 25, 2002 deadline for filing proofs of claim, Loretta, in her capacity as Guardian of Flora Rodrigues, moved for leave "to file *her* formal amended proof of claim (Exhibit A hereto) and for allowance of said proof of claim." [5] (emphasis supplied). In the absence of objections, the

---

**3.** The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, governing cases filed on or after October 17, 2005 amended the provisions of 11 U.S.C. § 1328 such that a debt for fraud may be excepted from discharge. *See* 11 U.S.C. § 1328(a)(2).

**4.** Notably, the deadline for filing an objection to the Debtor's claimed exemptions had ex-

pired by then. *See* Fed. R. Bankr.P. 4003(b)("A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded. . . .").

**5.** Though referenced as Exhibit A, the proof of claim was not attached to the Motion.

Court granted Loretta's Motion on April 16, 2002.

On April 26, 2002, the Debtor and Loretta filed a "Joint Motion for Leave to Amend the Pre Trial Conference Dates Set by the Court," seeking to extend the deadline for filing the Joint Pretrial Memorandum until June 10, 2002. The Court granted the Motion, but events intervened. On May 22, 2002, H. Crowell Freeman, Esq. ("Freeman") filed a Notice of Appearance "as Counsel to and Guardian of Flora Rodrigues in all matters regarding the above entitled proceedings," as well as a "Motion to Strike Appearance of James P. Long." In the latter pleading, Freeman represented that the Debtor and Loretta "have been involved in many years of acrimonious and costly litigation in the Suffolk Probate and Family Court regarding the guardianship of the Debtor's mother and what is her best interest regarding her personal and financial affairs" and that, on April 22, 2002, Judge Moriarty removed Loretta as guardian and appointed him in her stead. Attorney Freeman also stated that "[i]t is the present Guardian's opinion that Long has pursued a course of action for the sole purpose of trying to collect his fees, to the detriment of Flora's interest."

On the same day, Freeman, in his capacity as the newly appointed Guardian of Flora Rodrigues, and the Debtor filed an "Assented to Motion to Stay Proceedings Regarding Objection to Confirmation of Debtor's Chapter 13 Plan" for the purpose of allowing Freeman to review the Chapter 13 case and "determine whether or not he wants to conduct his own discovery, settle with the Debtor and/or modify or withdraw the objection to confirmation of the Debtor's Chapter 13 Plan." The Court granted this Motion on May 29, 2002.

Following the submission of those pleadings, Loretta filed both an Objection to Freeman's Motion to Strike Appearance of James P. Long and her own "Motion to Strike Appearance" directed at Freeman, as well as a "Motion for Sanctions for Debtors [sic] Intentional Failure to Conform to the Discovery Plan and Court Order." The Court heard those and other matters on June 13, 2002, but Flora Rodrigues's death on June 22,2002 mooted the controversy between Loretta and Freeman as to her guardianship.

On October 23, 2002, Long, in his individual capacity, filed a "Motion for Leave to File Formal Amended Proof of Claim and Allowance of Amended Proof of Claim." Long stated that "[t]he instant amended claim should be allowed to cure a defect in the 'Original Claim' as filed, because James P. Long, Esquire is the actual holder of Part B of the claim, not Flora Rodrigues." He added:

The "Original Claim" recites that it arises from two judgments of the Massachusetts Probate Court, Suffolk Division. Part A dated April 20, 2001 is a judgment in favor of Flora Rodrigues in the amount of $63,406.95. Part B dated September 17, 2001 an award [sic] of attorney [sic] fees in the amount of $4,750.68. Those judgments were obtained after lengthy litigation in which James P. Long represented Flora Rodrigues. Under Massachusetts General Laws, Ch. 221, § 50, counsel for the judgment creditor owns the execution in the case and is entitled to collect the entire sum from the judgment debtor, subject only to his fiduciary duty to his client. Payment of the proceeds to the client is subject to the attorneys [sic] statutory lien for legal services.[6]

---

6. The statute referenced by Long provides the following:

From the authorized commencement of an action, counterclaim or other proceeding in

Both the Debtor and the Estate of Flora Rodrigues filed Objections to Long's Motion. David J. Correira, as Administrator of the Estate of Flora Rodrigues, objected on the ground that there was an ongoing attorney fee dispute between Long and Flora Rodrigues's probate estate. Correira added that Long "should not own any execution nor collect any sum for the judgment creditor, the Estate of Flora Rodrigues, because there is a conflict in his fiduciary duty to his former client Loretta Rodrigues, as Guardian of Flora Rodrigues, because of the ongoing litigation over his attorney's fees." Correira stated that he holds the sole fiduciary duty to collect and distribute any assets, including payment of attorney's fees, for the Estate of Flora Rodrigues and allowance of Long's motion could prejudice her estate.

The Debtor also objected on grounds that deadline for filing proofs of claim was February 25, 2002, that the original proof of claim filed by Loretta included attorney's fees in the sum of $4,750.68, and that if Long's proof of claim were allowed the original proof of claim filed by Loretta on Flora Rodrigues's behalf would have to amended. At the conclusion of the January 8, 2004 hearing on Long's Motion, the Court denied it, finding, in particular, that he lacked standing to assert the claim. The Court also ordered the Debtor to file an amended plan within two weeks after the Probate Court issued its final order.

Long did not appeal the Court's January 8, 2004 order.

On September 30, 2005, the Debtor filed a Motion of Intended Compromise of Claim with the Estate of Flora Rodrigues. The Stipulation attached to the Motion set forth the pertinent facts noted above and contained the following recitations:

The Debtor acknowledges and agrees that Flora Rodrigues has asserted a claim against the Debtor in the amount of $68,157.63 by and through her previous Guardian and that said claim now belongs to her probate estate.

The Estate of Flora Rodrigues agrees to accept $10,000 in full settlement of any and all claims that flora Rodrigues, individually or through her estate, had, has or may have against the Debtor.

The Debtor agrees to pay the proof of claim of Flora Rodrigues through his plan pursuant to the terms of this Stipulation.

Upon allowance of Debtor's Motion to Compromise and this Stipulation, the Debtor shall amend his plan accordingly in order to pay said $10,000 to the estate of Flora Rodrigues over the course of the plan. . . .

On September 30, 3005, the Debtor mailed a copy of the Motion to David S. Kaplan, Esq. who had filed an Appearance of Counsel on behalf of Long on January 8, 2004. On November 3, 2005, in the absence of any objections, the Court granted

any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is

pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute. Mass. Gen. Laws ch. 221, § 50. The plain language of the statute does not support Long's contention that he "owns the execution in the case and is entitled to collect the entire sum from the judgment debtor. . . . "

the Debtor's Motion. Long did not appeal the order approving the compromise. Notably, the compromised claim of $68,157.63, included the amount of the judgment obtained by Loretta, namely $63,406.95, and attorney's fees of $4,750.68, as set forth in Long's Motion for Leave to File Formal Amended Proof of Claim and for Allowance of Amended Proof of Claim.

On December 19, 2005, the Debtor filed his First Amended Chapter 13 Plan in which he proposed to pay a lump sum of $10,000 directly to David Correira, as Administrator of the Estate of Flora Rodrigues. The Court confirmed the Amended Plan on February 22, 2006. The court sent a copy of the confirmation order to David S. Kaplan, whose business address at the time was the same as the business address used by Long on his disallowed proof of claim filed on October 23, 2003, as well as to Long at a Brookline, Massachusetts address. Long did not appeal the order of confirmation, which incorporated the terms of the compromise between the Debtor and Correira.

On April 24, 2006, the Chapter 13 Trustee file her Trustee's Report and Account and Notice of Deadline for Objections, which she served on Long at his office address, i.e. 101 Tremont Street, Suite 700, Boston, Massachusetts. The next day, the Debtor received his Chapter 13 discharge. Although Long filed an "Opposition to Trustee's Report and Account and Motion to File Objection Late," the Court denied the Motion on June 22, 2006 and granted the Trustee's Motion to Strike Opposition to Trustee's Report and Account and Motion to File Objection Late. Long did not appeal the order striking his opposition, and, on June 27, 2006, the Court discharged the Chapter 13 Trustee and closed the Debtor's case. Ten months later, Long filed the motions now before the Court.

In his Motion to Reopen, Long moved "on behalf of himself and all of the creditors scheduled in the bankruptcy schedules filed by the Debtor" to reopen the Debtor's bankruptcy case, stating that "Rodrigues has recently reopened the case in the Suffolk Probate [sic] and in that process he has disclosed that he committed a fraud on the Bankruptcy Court by failing to disclose an investment account at Fidelity Investments which was subject to an attachment by his judgment creditors."[7] Long added that he account has a current value between $13,000 and $53,000 and that the Probate Court had issued an attachment with respect to that account in September of 2001. Long claimed that the Debtor did not list the asset or disclose that the account was subject to an attachment, that he opposed the settlement between Correira and the Debtor, that this Court approved the compromise finding that the settlement amount "was the totality of the assets" that the Debtor had available to satisfy his creditors, and that the Court "was unaware of the fact that Rodrigues was in possession of an investment account at Fidelity Investments which had a value of at least $13,000 when it approved the settlement."

Long also stated that he opposed the Debtor's attempt to reopen the Probate Court matter because the Debtor was precluded from filing or prosecuting such a motion because of the automatic stay and because the Fidelity account was within the sole and exclusive jurisdiction of the Bankruptcy Court. Long revealed that "[i]n spite of the well known and clearly understood law in this area, the Suffolk

---

**7.** The Objections to the Confirmation of the Debtors [sic] Chapter 13 Plan filed by Long in open court on February 28, 2002 on Loretta's behalf, as well as the Debtor's Schedule B, belie Long's assertion.

Probate Court … improperly reopened the case" and discharged the attachment. He added: "[i]nexplicably the Probate Court has also assessed attorney's fees against the undersigned" in the sum of $1,900. In conclusion, Long asked this Court to vacate any and all orders issued by the Probate Court since October 2001 and vacate the Debtor's discharge. In addition to the Motion to Reopen, Long filed the Motion to Remove in which he stated that this Court "specifically should ORDER that the discharge of the attachment granted by the Suffolk Probated [sic] Court be vacated as it was void."

The Debtor and the Chapter 13 Trustee opposed Long's motions, noting that allowed claims in the Debtor's case were paid a 100% dividend, and that any claim Long may have would be against the Administrator of the Estate of Flora Rodrigues.

In response to Long's motions, the Debtor also sought the imposition of sanctions, asserting that the reasons Long advanced for the relief he requested were frivolous and interposed for an improper purpose, namely harassment of the Debtor, and that his actions violated the discharge injunction. The Debtor sought legal fees and costs in the sum of $2,430, as well as punitive damages and injunctive relief.

## III. DISCUSSION

### A. *The Motion to Reopen and the Motion to Remove*

 The Court finds that Long lacks standing to prosecute the Motion to Re-

open. In the first place, Long is not a creditor of the Debtor. Although he asserted an untimely claim against the Debtor in his individual capacity, his claim was disallowed. Moreover, the Court finds that Long is not a party in interest with standing to seek the reopening of the Debtor's case or revocation of his discharge. *See* 11 U.S.C. § 1328(e). "Parties in interest are those who have a stake in the outcome of the bankruptcy case. They generally fall within four major, relatively well-defined groups—debtors, creditors, equity security holders, and court fiduciaries." William C. Hillman & Margaret M. Crouch, BANKRUPTCY DESKBOOK § 1.4 at 1–10 (4th ed. 2005 & Supp.) (citation omitted). *See also* 11 U.S.C. 1109(b)(party in interest includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee). Long does not fit within any of those recognized groups. Accordingly, the Court finds that he is neither a creditor nor a party in interest.

In this case, the Court sustained the Objections filed by the Debtor and the Estate of Flora Rodrigues to Long's "Motion for Leave to File Formal Amended Proof of Claim and for Allowance of Amended Proof of Claim" and disallowed Long's claim because it was untimely and Long lacked standing to assert it. *See* 11 U.S.C. § 502(b)(9), and *Travelers Cas. and Sur. Co. of Amer. v. Pacific Gas and Elec. Co.,* —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).[8]

---

**8.** In *Travelers Cas. and Sur. Co. of Amer. v. Pacific Gas and Elec. Co.,* —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), the United States Supreme Court summarized applicable law with respect to proofs of claim. It stated:

> When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of

claim—i.e., a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)—against the debtor's estate. Once a proof of claim has been filed, the court must determine whether the claim is "allowed" under § 502(a) of the Bankruptcy Code: "A claim or interest, proof of which is filed under section 501 … is

Federal Rule of Bankruptcy Procedure 3002(c), provides in pertinent part that "[i]n a ... chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code...." As noted above, Long's Amended Proof of Claim was filed approximately twenty months after the bar date, the Court denied Long's motion to assert the claim for attorney's fees in his individual capacity because the claim belonged to Flora Rodrigues, and Long did not appeal the January 8, 2004 order.

■ Not only did Long fail to appeal the order disallowing his untimely proof of claim for lack of standing, the Court granted the "Motion of Debtor of Intended Compromise of Claim with the Estate of Flora Rodrigues." In the Stipulation attached to the Debtor's motion, the Debtor and Correira, the Administrator of the Estate of Flora Rodrigues, agreed that the total amount of the claim of the Estate of Flora Rodrigues was $68,157.63, a sum which included the attorney's fees claimed by Long in the sum of $4,750.68. The $10,000 settlement of that claim was incorporated in the Debtor's First Amended Chapter 13 Plan which this Court confirmed on February 22, 2006. Long, despite his recent argument to the contrary, did not object to the proposed compromise

and did not appeal the order granting the Debtor's Motion of Intended Compromise of Claim with the Estate of Flora Rodrigues or the order of confirmation. Accordingly, the treatment of his purported claim and that of the Estate of Flora Rodrigues is *res judicata.*

As the court recognized in *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370 (1st Cir. BAP 2001), "[p]lan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality." *Id.* at 373 (citations omitted). Because Long did not have an allowed claim at the time of confirmation and did not object to confirmation, his Motion to Reopen for purposes of revoking the Debtor's discharge is without merit and futile.

■ Additionally, even assuming that Long had standing to seek revocation of the Debtor's discharge through his Motion to Reopen, the grounds stated pertain to fraud in conjunction with the Debtor's claimed exemptions. Notably, neither Loretta nor Long objected to any of the Debtor's claimed exemptions on Schedule C, in particular the Fidelity IRA, which contrary to Long's assertions, the Debtor disclosed on Schedule B and Long referenced in his own pleading. *See* Fed. R. Bankr.P. 4003(b). Even if the Debtor improperly claimed an exemption in his Fi-

---

deemed allowed, unless a party in interest ... objects."
But even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). *Ibid.* Those exceptions apply where the claim at issue is "unenforceable against the debtor ... under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the

reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was brought to the court's attention through an untimely proof of claim, § 502(b)(9).
127 S.Ct. at 1204.

delity IRA, Long's challenge is barred by his failure to take timely action. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).[9] Long's position with respect to the Debtor's Fidelity IRA is unsupported by existing law. Indeed, it contravenes Supreme Court precedent. Moreover, the Debtor was not precluded by the automatic stay from avoiding an attachment on the account as the property was not part of his bankruptcy estate, and the stay did not apply to his actions as it was no longer in effect. *See* 11 U.S.C. § 362(c).

The further relief requested by Long is subject to the similar problems, namely absence of factual or legal support. For example, in his Motion to Remove, Long, without mentioning Fed. R. Bankr.P. 9027, asks this Court to sit as an appeals court with respect to the orders entered by the Probate Court when he states "[t]he court specifically should ORDER that the discharge of the attachment granted by the Suffolk Probated [sic] Court be vacated as it was void." Constitutional infirmities aside, the *Rooker–Feldman* doctrine deprives this Court of juris-

9. In *Taylor*, the Supreme Court determined the following:

> When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. *See* 11 U.S.C. § 541. The Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis [the debtor] to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d). Section 522(I) states the procedure for claiming exemptions and objecting to claimed exemptions as follows:
>
> > "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt."
>
> Although § 522(1) itself does not specify the time for objecting to a claimed exemption, Federal Rule of Bankruptcy Procedure 4003(b) provides in part:
>
> > "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) ... unless, within such period, further time is granted by the court."
>
> In this case, as noted, Davis claimed the proceeds from her employment discrimination lawsuit as exempt by listing them in the schedule that she filed under § 522(I). The parties agree that Davis did not have a right to exempt more than a small portion of these proceeds either under state law or under the federal exemptions specified in § 522(d). Davis in fact claimed the full amount as exempt. Taylor, as a result, apparently could have made a valid objection under § 522(1) and Rule 4003 if he had acted promptly. We hold, however, that his failure to do so prevents him from challenging the validity of the exemption now.
>
> Taylor acknowledges that Rule 4003(b) establishes a 30–day period for objecting to exemptions and that § 522(1) states that "[u]nless a party in interest objects, the property claimed as exempt ... is exempt." He argues, nonetheless, that his failure to object does not preclude him from challenging the exemption at this time. In Taylor's view, § 522(1) and Rule 4003(b) serve only to narrow judicial inquiry into the validity of an exemption after 30 days, not to preclude judicial inquiry altogether. In particular, he maintains that courts may invalidate a claimed exemption after expiration of the 30–day period if the debtor did not have a good-faith or reasonably disputable basis for claiming it. In this case, Taylor asserts, Davis did not have a colorable basis for claiming all of the lawsuit proceeds as exempt and thus lacked good faith.
>
> Taylor justifies his interpretation of § 522(1) by arguing that requiring debtors to file claims in good faith will discourage them from claiming meritless exemptions merely in hopes that no one will object. Taylor does not stand alone in this reading of § 522(b). Several Courts of Appeals have adopted the same position upon similar reasoning.
>
> We reject Taylor's argument.
>
> 503 U.S. at 642–43, 112 S.Ct. 1644.

diction to determine Long's challenges to orders of the Probate Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Because Long's positions are without factual support, and because he seeks, in effect, to appeal previous orders of this Court and the Probate Court, the Court finds that his present motions were interposed for an improper purpose. Moreover, the Court finds that Long's legal contentions are unwarranted by existing law and are frivolous.

## B. *The Sanctions Motion*

In his Sanctions Motion, the Debtor seeks payment of "reasonable expenses, attorney's fees, punitive damages and sanctions against . . . Long . . . for filing a frivolous Motion to Reopen . . . and Memoranda in support thereof, and for filing frivolous Complaints and Appeals with the Suffolk County Probate and Family Court . . . post-petition in violation of the Debtor's Discharge Order dated April 25, 2006, pursuant to 11 U.S.C. § 524." Highlighting the pleadings filed in this Court, the Debtor also points to Long's action in filing an Amended Notice of Appeal in the Probate Court in which he alleged that the Probate Court's rulings were erroneous as a matter of law. In an Affidavit filed in conjunction with the Sanctions Motion, Rodrigues's attorney stated: "James P. Long has continued on a personal vendetta against the Debtor by continuing to seek to collect damages from him by filing frivolous actions post-discharge in the Suffolk County Probate and Family Court and now in the United States Bankruptcy Court as well," adding that Long has lied to both courts.

In the Affidavit, counsel represented that she "has and will spend approximately 12.00 hours reviewing the case and drafting pleadings, including motions, and travel to and attending one or more hearings on these actions in Boston," thereby justifying an award of legal fees in the sum of $2,430 based upon her hourly rate of $200. She also emphasized Long's intentional disregard of the Debtor's discharge due to his pursuit of the Debtor in the Probate Court.

Federal Rule of Bankruptcy Procedure 9011 provides in relevant part the following:

(a) Signing of papers

Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. . . .

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are like-

ly to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). *It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected,* except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On court's initiative

On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Fed. R. Bankr.P. 9011.

■ Although this Court has determined from its own review of the record of proceedings in this case that Long's Motion to Reopen and Motion to Remove lack merit, the Court cannot award sanctions as the Debtor has failed to afford Long the safe harbor provided by Rule 9011(c)(1)(A). Debtor's counsel's Affidavit is devoid of evidence that the Sanctions Motion was served upon Long before it was filed with the Court. Accordingly, the Court may not sanction Long pursuant to the Debtor's Sanctions Motion for his violations of Rule 9011(b).

■ With respect to Long's alleged violations of the discharge injunction, the Court finds that the Sanctions Motion lacks an appropriate nexus between Long's conduct in violating the discharge injunction and the attorney's fees the Debtor seeks. Stated another way, the Court does not have a fee application which allocates the time spent on Probate Court matters versus time spent on bankruptcy related matters. Accordingly, the Court must deny the Sanctions Motion, without prejudice, to the extent the Debtor seeks damages for violation of the discharge injunction.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the "Creditors [sic] Motion to Reopen Debtors [sic] Petition" and the "Creditors [sic] Motion to Remove Case to the Bankruptcy Court." Further,

the Court shall enter an order denying the Debtor's "Motion for Sanctions Pursuant to Bankruptcy Rule 9011 and for Intentional Violations of 11 U.S.C. § 524 against James P. Long."